## Charles H. Snow *vs.* The Coe Brass Manufac-turing Company.

* First Judicial District, Hartford, May Term, 1907.
Baldwin, C. J., Hamersley, Hall, Prentice and Thayer, Js.

In an action for negligence, the duty or degree of care required of the respective parties is a question of law, which is reviewable by this court on appeal.

The failure of a person injured to use and act upon his knowledge of the peril or danger to which he is exposed, when there is nothing to prevent or excuse him from so doing, is negligence as matter of law.

In the present case the plaintiff, while sitting on the wheel guard-rail of a bridge close to the driveway, was struck and injured by the hub of a loaded truck which at that moment was passing another going in the opposite direction and together with the latter occupied substantially all of the driveway. The plaintiff was familiar with the bridge and knew that these trucks were approaching, and a mere glance or a moment's thought would have shown him that they were likely to pass each other about where he sat. Instead of moving from his exposed position, he continued to chat with the gate-keeper of the bridge until the truck horses were right upon him, when he endeavored to escape but without avail. *Held* that by remaining in such a position of known danger and thus taking close chances of avoiding injury he was guilty of contributory negligence, although at the last moment he acted prudently, as found by the trial court.

Argued May 9th—decided June 7th, 1907.

Action to recover for personal injuries caused by the alleged negligence of the defendant, brought to and heard in damages by the Superior Court in New Haven County, *George W. Wheeler, J.;* facts found and judgment rendered for the plaintiff for $2,294, and appeal by the defendant. *Error and cause remanded for the assessment of nominal damages.*

*Frederick W. Holden* and *Edward A. Harriman,* for the appellant (defendant).

* Transferred from the third judicial district.

*George E. Beers* and *Carl E. Mears,* for the appellee (plaintiff).

HALL, J. The complaint alleges that on August 3d, 1905, the plaintiff was "licensed, invited, and permitted," in going to and from the factory of the Farrel Foundry and Machine Company, where he was employed, to cross a certain bridge over the Naugatuck River known as the Brass Mill bridge, which was owned and used by the defendant in connection with its manufacturing business in Ansonia; and that "on said day, while the plaintiff in the exercise of due care was upon said bridge and crossing it, he was suddenly and without warning struck and run over by one of the wheels of a wagon, driven by one of the servants of the defendant negligently and carelessly, and his right foot was crushed and severely injured."

In rendering judgment for substantial damages, the trial court reached the conclusion, upon the facts found, "that the plaintiff acted as an ordinarily prudent man similarly situated"; that the defendant was guilty of active negligence; and that the defendant failed to sustain the burden of proof imposed upon it by the default.

The following facts were found upon substantially uncontradicted evidence: The bridge in question has for many years been owned and operated by the defendant. Its principal use is for the passage over it, in connection with the defendant's business, of its one, two, and three-horse trucks. The employees in the defendant's factory, and in other factories, including that in which the plaintiff was employed, and other persons, are permitted to pass over the bridge on foot. The bridge is of iron, and known as a bar truss construction bridge, and has a planked driveway its entire length. On each side of the driveway is a wooden stringer or wheel guard-rail, and upon the inner face of the upright trusses upon each side of the bridge is an "iron channel guard-rail." The bridge extends nearly east and west; is 151 feet long, 17 feet, $3\frac{1}{2}$ inches wide, measured from the inner faces of the trusses, and 16 feet, $11\frac{1}{2}$ inches

wide, measured from the inner faces of the iron channel guard-rail. The driveway is 16 feet, $\frac{1}{2}$ inch wide, measured from the inner faces of the wheel guards. The wheel guards are $5\frac{3}{4}$ inches high, and $7\frac{1}{2}$ inches wide. The channel guard-rails are 6 inches wide, measured perpendicularly, are 2 feet, $4\frac{1}{2}$ inches above the top of the wheel guard-rail, and extend inward from the inner faces of the trusses 2 inches. A gate-house, 7 feet wide facing the bridge and 5 feet wide on its east and west sides, is suspended 18 feet from the westerly end of the bridge, the south side of it being $2\frac{1}{2}$ inches north of the north face of the wheel guard-rail; the door on the south side, on a level with the wheel guard-rail, being 2 feet, 5 inches wide. A foot west of the gate-house are suspended sliding gates, by which the entrance to the bridge may be closed.

Just before the accident, the gates being open, one Cooper, an employee of the defendant, drove a two-horse team drawing a heavily loaded four-wheel truck upon the east end of the bridge, and proceeded to cross the bridge going westerly. At the same time a three-horse team, also drawing a heavily loaded four-wheel truck, driven by one Kefford, an employee of the defendant, approached the bridge from the west. Both Cooper and Kefford were engaged in the defendant's business. The following are some of the measurements of the two trucks: The distance between the outer ends of the whiffletrees and evener of the Cooper truck was 6.84 feet, and of the Kefford truck 9.10 feet. The distance between the outer edges of the hubs of the rear wheels of the Cooper team was 6.35 feet, and between the outer edges of the tires 5.55 feet.

At about five o'clock in the afternoon of the day of the accident, the plaintiff, who had for some years been employed in the Farrel Foundry and Machine Company, working nights, while on his way to his work stopped at the invitation of the defendant's watchman and gate-tender, who sat in a chair in the doorway of the gate-house, and engaged in conversation with him. The plaintiff had been accustomed to cross the bridge on his way to and from his

work, and was familiar with the use of the bridge. He had many times seen two-horse teams pass upon the bridge, but had never seen a two and three-horse team pass each other. While so talking with the gateman the plaintiff sat upon a small box which stood on end upon the top of the wheel guard-rail, in front of the gate-house, about two feet east of the door, and which had before been used by the gate-tender and others as a seat. The plaintiff's face as he sat upon the box was turned toward the gate-tender, his right shoulder and side being against the gate-house. He turned and saw Cooper's team coming onto the bridge from the east, and then resumed his conversation with the gate-tender, paying no further attention to the team, although he heard it as it approached on the bridge. He did not see it again until Cooper's horses were upon him as hereafter stated. He also heard Kefford's team as it approached the bridge, and saw it when it reached the westerly end of the bridge, but paid no attention to it thereafter. Cooper drove onto the bridge at about the middle of it, and so proceeded until he was about half way across, when he turned to the north into the ordinary wheel tracks on that side. When he was within about thirteen feet of the plaintiff, he turned his horses suddenly to the north almost against the wheel guard-rail, in order to pass the three-horse team, and when his horses were opposite the plaintiff, and Kefford's horses were opposite Cooper's, the latter turned his horses up to the guard-rail so far and so suddenly that the plaintiff was unable to get out of the way. The plaintiff thereupon threw his left foot, which was resting on the floor of the bridge, up onto the guard-rail, and extended himself toward the gate-house, and this, as the trial court finds, was the best he could have done in the exercise of ordinary care, in the situation in which he was placed when he saw the horses upon him. The hub of Cooper's front wheel struck his knee, and he cried out, but neither Cooper nor Kefford heard him. The hub of the hind wheel struck him and knocked him off the box, and the hind wheel ran over his right foot. Cooper,

then hearing him cry out, stopped his horses within three or four feet. Cooper had seen the plaintiff seated on the box, but when he was within about thirteen feet from him he gave his entire attention to passing Kefford's team without colliding with it, and his attention was not again called to Cooper until he heard him cry out.

The trial court says in its finding, that "there was room enough for these teams to have passed without driving in upon the plaintiff"; that "there was no danger to the plaintiff where he sat, provided Cooper had kept in the ordinary course of travel upon the north side of the bridge, and had not swung his team in close to the north guard-rail, and there was no necessity for his doing that"; that "the plaintiff could have seen the approach of both teams and known that they might meet on the bridge, had he looked in time"; that "he could readily have changed his position to one of safety after he first saw Cooper's team and heard Kefford's team approaching, before the teams met each other upon the bridge, and could so have avoided any injury to himself." In a paragraph of the draft-finding marked "proven," the trial court finds that "the plaintiff could readily have seen the approach of both teams if he had taken the trouble to look."

Accepting as conclusive the decision of the trial court that when the plaintiff saw Cooper's horses upon him he did everything to protect himself from injury that could reasonably be expected of a person of ordinary prudence under similar circumstance, the facts found lead us to conclude that the proper test could not have been applied to the plaintiff's conduct prior to that time.

If the facts from which due care was inferred by the trial court show that it required of the plaintiff a lower degree of care than that imposed by law, there was an error of law, and the conclusion of the trial court upon the question of contributory negligence may be reviewed by this court. *Morrissey* v. *Bridgeport Traction Co.*, 68 Conn. 215, 217, 35 Atl. 1126. And in inquiring whether a proper degree of care was required of the plaintiff, we must not only con-

sider what he did at the last moment, when the horses were upon him, but also his conduct before that time in sitting upon the box on the guard-rail in the position he did, with the knowledge which he had of the danger to which he was thus exposing himself.

In the case last cited we held that the trial court failed to require a proper degree of care of the plaintiff's servant, in holding him free from contributory negligence when he continued to drive along on a street-railway track until a car overtook and struck him, which he knew was approaching from behind at a greater rate of speed than his own. We said in that case that it was the duty of the plaintiff's servant, under the circumstances, to drive off the track without loss of time, and that his failure to do so was negligence. In *Rowell* v. *Stamford Street R. Co.*, 64 Conn. 376, 380, 30 Atl. 131, in which the trial court found that the plaintiff was not guilty of contributory negligence, it was held that there was error in ruling that certain stones, tools, and fresh dirt, left on the side of the street did not indicate to one who had previous knowledge that workmen were digging a trench at this place, that there was danger in driving upon the defendant's track. In speaking of one situated as the plaintiff in that case was, this court said: "He must use his senses to avoid danger. He must not shut his eyes. If he has knowledge that a dangerous place exists, there can be no presumption in his favor. He must exercise care not to fall into it, and he is bound to make use of all the means of knowledge which are reasonably open to him." The failure of a person to use and act upon his knowledge of the perils to which he is exposed, when there is nothing to prevent or excuse him from doing so, is negligence. *Nugent* v. *New Haven Street Ry. Co.*, 73 Conn. 139, 143, 46 Atl. 875. A person standing upon a sidewalk is bound, for the purpose of avoiding injury, to exercise some degree of care with reference to what he knows to be the traffic in the roadway. *Hayden* v. *Fair Haven & W. R. Co.*, 76 Conn. 355, 362, 56 Atl. 613. One has no right to calculate close chances of

avoiding injury and throw the risk of failure on the other party. *McCarthy* v. *Consolidated Ry. Co.*, 79 Conn. 73, 76, 63 Atl. 725.

In the case before us the plaintiff was permitted to cross the bridge on foot in going to and from his work, but that did not amount to an invitation or license to sit on this box on the top of the $7\frac{1}{2}$ inch, wide guard-rail, and chat with the gate-tender.

The bridge belonged to the defendant and was for the use of teams. There was no foot path on it, and persons who were permitted to cross it on foot were required to walk in the roadway used by teams. The measurements of the bridge and of the tracks show that there was no place on the bridge where a person could sit without occupying some part of the driveway, and that there was no place outside of the gate-house where even the gate-tender could sit without liability of being struck when a two-horse and a three-horse team truck were passing each other opposite him.

As the plaintiff was familiar with the bridge and its use, all these facts were known or apparent to him. The fact that he knew that one and two-horse teams had passed each other on the bridge without danger to one in his position, or that it was barely possible, from the dimensions of the bridge and the two trucks, for these two teams to have passed each other at the point they did without striking the plaintiff, does not relieve the plaintiff from the charge of negligence. He knew that these were not the ordinary teams he had seen pass each other. He is also presumed to have known, what is a matter of common knowledge, that drivers of such teams, in passing each other under such circumstances as those described in the finding, are not to be expected to be able from their seats to so perfectly control and guide their horses and so accurately direct their heavily-loaded trucks, that they will not deviate at least several inches from a desired course; and that drivers, when their teams pass each other under such circumstances, must give their attention not only to the motions of their own horses, but those of the other team.

With the knowledge of which the plaintiff was possessed and that with. which he was chargeable, he would not have been justified in remaining seated upon the box where he was, upon the belief that these two teams would pass each other without hitting him, if they met at the point where he sat. Apparently he did not entertain such a belief, but remained where he was, engaged in conversation, without thinking that the teams would meet there and without considering where they would meet. He was negligent in so acting. He was in the full possession of his faculties. He saw Kefford's team come onto the bridge from the west some time after he saw Cooper's coming onto it from the east, and while he heard the latter team approaching him on the bridge. He knew if the two teams continued to advance they must meet on the bridge, and a glance or a moment's thought would have shown him that they would probably meet near him. Instead of using his senses, as he should have done, to learn his danger and avoid it while he could, he turned his back to the teams and continued his chat with the gate-tender and gave the teams no further attention. In determining whether he was negligent, he must be held to have been required to act as well upon what he should have known, as upon what he knew. The facts show that the trial court failed to require him to do so, and that it erred in not holding that the plaintiff's negligence essentially contributed to his injury.

Having reached this conclusion we are not required to discuss the defendant's claim, that in finding Cooper guilty of negligence the trial court evidently assumed the existence of certain distances in. stated situations, between parts of the tracks and parts of the bridge, which are not reconcilable with the measurements given in the finding.

There is error and the case is remanded with directions to render judgment for nominal damages.

In this opinion the other judges concurred.