GEORGE W. MESSINGER, ADMINISTRATOR (THOMAS H.
PRITCHARD, ADMINISTRATOR, SUBSTITUTE PLAIN-
TIFF), *vs.* THE NEW YORK, NEW HAVEN AND
HARTFORD RAILROAD COMPANY.

Third Judicial District, Bridgeport, April Term, 1912.
PRENTICE, THAYER, RORABACK, GEORGE W. WHEELER and RALPH
WHEELER, Js.

A railroad company which permits an engineer to run in a reckless man-
ner is itself guilty of negligence in failing to use reasonable care to
guard against the known habitual negligence of its employee.

The duties of the towerman, if in fact he has local control of the tracks
and trains, differ from those of the switchman in that they are not
merely manual, but executive, corresponding to those of the train
dispatcher; if he be not in control of those tracks, but acts under
orders from another, it is to be presumed that he acted within his
orders; in either case, the duty involved is the master's.

The fellow-servant defense is available against the personal negligence
of a coservant but never against a breach of the master's duty.

It is the legal duty of a railroad company to exercise reasonable care to
give its employees a reasonably safe place in which to work in view
of the character of the employment and the danger attendant
upon it.

The servant assumes, as a part of his contract of employment, risks or-
dinarily incident to it, but not extraordinary risks.

When a servant is set to work in a place of safety, he is entitled to notice
before that place is made dangerous; a failure to give such notice
is a breach of a duty which cannot be delegated.

The master is liable for an injury which is the result of the combined
negligence of himself and of a fellow-servant of the injured; in that
event, a charge is not improper which ignores the fellow-servant
doctrine and confines the issue to the master's negligence.

It is proper for the trial court to determine the standard of duty of the
defendant, leaving it to the jury to determine the conduct of the
defendant.

The plaintiff's intestate was working upon a cross-over track (No. 2)
on which traffic had been suspended for several hours, owing to a
wreck. The first engine which was thereafter switched upon that
track by the towerman without warning, struck and killed the
intestate. It was running backward at a rapid speed, and the
engineer gave no warning of its approach, nor was it customary for

him to ring or whistle in backing down over the cross-overs to the railroad yard. The deceased's foreman had left temporarily after warning him against track No. 1, next to that on which he was working, on which trains were then running, but not against No. 2, the track on which the accident occurred. *Held:*—

1. That the foreman was a fellow-servant of the intestate and was not negligent.

2. That the engineer was a fellow-servant of the intestate and was negligent, and this was a proximate cause of the accident, and that the custom of backing without use of bell or whistle tends to affect the principal with knowledge of this customary negligence; such negligence is that of the company, against which the fellow-servant doctrine is no defense; but this defense is not available because not pleaded.

3. That the act of the towerman in throwing this switch was done in the performance of the master's duty and did not constitute personal negligence on his part.

4. That the deceased could not anticipate this danger before the track was repaired or warning given him; the risk was extraordinary, arising out of an unusual situation, and one which he did not assume.

5. That the defendant was negligent in failing to warn the plaintiff's intestate of the danger from putting the track in commission, and that this was either the proximate cause of his injury, or a remote cause, in connection with the negligence of the towerman.

6. That an instruction that if the jury found track No. 2 had been out of commission from four o'clock in the morning until one-fifteen p. m., that the intestate had worked upon the disused track during this time, that the engine had been turned on track No. 2 without the knowledge of the intestate, that this was the proximate cause of his injury and that his own negligence did not materially contribute to them, the jury might find the defendant negligent,—was adequate to the case, and neither ambiguous, inconsistent, nor calculated to mislead the jury.

7. That the court committed no harmful error in ignoring in its charge a discussion of the fellow-servant doctrine as applied to the engineer and towerman and in confining the issue to the single ground of negligence stated in the preceding paragraph.

Argued April 17th—decided June 13th, 1912.

ACTION to recover damages for personal injuries resulting in the death of plaintiff's intestate and alleged to have been caused by the defendant's negligence, brought to the Superior Court in Fairfield County and

tried to the jury before *Shumway, J.;* verdict and judgment for the plaintiff for $2,500, and appeal by the defendant.  *No error.*

*Joseph F. Berry,* for the appellant (defendant).

*Homer S. Cummings* and *Charles D. Lockwood,* for the appellee (plaintiff).

GEORGE W. WHEELER, J.  At the close of the plaintiff's evidence the defendant rested.  The jury might reasonably have found upon the evidence submitted the following facts; indeed, the record would seem to indicate that any other finding would have been unreasonable:—

The defendant operates its railroad at Stamford over four main parallel tracks running east and west, and numbered from north to south, three, one, two, and four.  Passenger trains from the east, as a rule, come in over track three at or near the west-bound Stamford station, where the steam engine is cut off and replaced by an electric motor.  The engine so cut off runs westerly to a point about two hundred feet west of cross-overs or switches to the said four tracks, and then backs in an easterly direction, customarily passing by the cross-over to track two, and thence to the railroad yard.  The cross-overs are within the view of, and under the control of, a towerman located in a signal tower in front of said switches and about thirty-five feet distant from the cross-over at track two.  The towerman determines upon which track to run the engine to the yard, and by levers throws either switch and turns the engine onto either of the four tracks.  The act of throwing the switches is the same in kind as the work performed by switchmen upon the ground.  The engine, if thrown on tracks three and one, would be against traffic, whereas, if on tracks two and four, would be with the traffic.

There had been a wreck on track two at about the point of the cross-over to track two, necessitating considerable repairs, and compelling a cessation of traffic over track two until these repairs had been completed.

The deceased, an employee of defendant, began work with other employees at this point about four o'clock on the morning of February 11th, 1909. A part of the gang finished their work about eleven o'clock in the morning, and the deceased and Tucker were left to finish the work under the direction of Quinn, an assistant foreman. They worked until 11.30 a. m. when they went to dinner and returned to work at 12.45 p. m. Quinn left these men about five minutes before the accident occurred, upon a necessary errand, going near the signal tower, saying to the men as he left, "Look out on track one." Track one was the only track over which the engines had passed to the yard during the time track two had been out of commission and while these men were working there. Track two had been repaired just prior to the accident, so that trains could have been run over it, but the work of necessary repair had not yet been finished. Shortly before the accident, a train had come from the east over track three, stopped at the west-bound station, and the engine had been detached and run westerly to a point just west of where the cross-over comes into track three, being about two hundred feet from where the men were working, and backed over the cross-over to track two, with the tender ahead, at a rapid speed, without ringing the bell or sounding the whistle, and run into the deceased about 1.10 p. m.

Tucker and the deceased were then engaged in tightening the switch bolts at the point of the switch of track two. Both were kneeling down, with their eyes and attention upon their work. Tucker faced tracks one and three, and the deceased faced away from

tracks one and three and toward the tower, having, therefore, his back toward the approaching engine. This was the first engine which had passed over track two since the wreck. Tucker, facing the approaching engine, did not see it go west on track three, but saw it when it stopped west of the cross-over, and expected it would come east, as had been the custom, over track one. He felt the rail shake, and looked up and saw the engine about twenty feet away, and shouted to the deceased, "Look out Paul," and barely had time to escape. The deceased did not see the engine go west on track three, nor see it as it stopped, and did not know of its approach until warned by Tucker, when it was too late to escape. The deceased expected, as did Quinn, all engines backing to the east would go on track one until the repairs were completed. No one had warned the deceased, or Tucker, or Quinn, that track two had been put in commission. The switch was thrown for track two some time after Tucker and the deceased returned from dinner. Had there been no unusual noise at the time, they could have heard the switch when thrown. They did not hear it, and did not know it had been thrown, until they saw the engine upon them. Because of the obstruction of the tender the engineer could not see the deceased or Tucker. It was not the custom for the engineer to ring the bell or blow the whistle of the engine when backing it across these cross-overs into the railroad yard.

The deceased was an experienced section-man and track-walker, and knew about the repair of tracks, which was a part of his duties. His work included the point of the accident. In his work of repair upon tracks open to traffic it was his duty to watch for approaching trains, and get out of their way when he saw them approaching.

The substantial errors upon which the appeal rests

may be thus summarized: The defendant claims that the only negligence which the plaintiff can rely upon on the evidence is that of fellow-servants, for which the defendant is not responsible, and that upon the evidence the deceased was as matter of law guilty of contributory negligence. And therefore it insists the motion to direct a verdict, and that to set aside the verdict, should have been granted. It further insists that the court's refusal to charge that the plaintiff could not recover for the negligence of Quinn, of the engineer, and of the towerman, or for their combined negligence was error, since they were fellow-servants with the deceased; and that the court erred in failing to adequately charge the jury upon whether the negligence proven was that of the defendant, or of persons who occupied the position of fellow-servants to the deceased.

The grounds of negligence set forth in the complaint are: (a) The negligence of the defendant in failing to warn the deceased of the approach of the locomotive. (b) The negligence of Quinn in leaving the deceased at work with no one to warn him. (c) The negligence of the engineer in backing his engine upon the deceased without keeping a lookout and without ringing his bell. (d) The negligence of the towerman in sending the engine on track two when he knew, or ought to have known, that the deceased was at work on that track.

Assuming the jury to have found the facts as we state them, Quinn was in charge of these men and under our decisions a fellow-servant of theirs. A part of his duty was to give them notice of an approaching train or engine on tracks one or four. He had no duty to guard against a train or engine on track two while that track was in disuse, since he had no reason to expect the engine to back down on track two until the track was again in commission. He had but just left the men, having warned them to be on their guard against traffic on

track one, which was the track upon which engines had backed down during the repairs to track two. He was away temporarily, upon a necessary errand, and we think his conduct could not, under the circumstances, be held to be negligent, or the proximate cause of the injury to the deceased.

The engineer was likewise a fellow-servant of the deceased, whose contract of employment included his own responsibility for the negligence of his coservants.

The engineer, in backing his engine upon the deceased without ringing his bell, was clearly negligent, and this was a proximate cause contributing to the injury to the deceased. That this method of backing his engine was the one customarily used at 'this point does not relieve his negligence, but rather tends strongly to bring home to his principal the knowledge of his customary negligence.

A railroad company which knowingly permits an engineer to run his engine in a reckless manner liable to cause injury to others is itself guilty of negligence in failing to use reasonable care to guard against the habitual negligence of its employee known to it. *Furlong* v. *New York, N. H. & H. R. Co.*, 83 Conn. 568, 78 Atl. 489. Such negligence is that of the company, against which the fellow-servant doctrine is no defense.

As the complaint does not rest upon this ground of negligence, it was not before the jury, and can afford no support to the judgment. The nature and importance of the work of the towerman, if he in fact has control of the tracks, trains, and engines at this point, differs radically from that of the ordinary switchman. In the mere manual act of throwing the switches their duties are not dissimilar, but the control of the tracks and the determination which to use and which not to use is another sort of duty. It is executive. It corresponds to the duty of the train dispatcher, differing

from his in degree, in the complexity of the work, and in the locality covered.

It may be from this evidence that the towerman determined the track the engine was to go on, and the absence of evidence, within the power of the defendant, in contradiction of this, or in explanation of the extent and nature of his duties, the jury would have been justified in finding that the towerman had such control of these tracks as to make his determination of the track the engine was to go on a matter involved in the performance of the duty of the defendant master, but we think it better to postpone consideration of this question for another occasion when in all likelihood the evidence may enable us to know the entire range of the towerman's duties and their relation to the operation of the railroad.

If the towerman be not in control of these tracks, but acts on telegraphic, telephonic, or general order, from some one in charge of the tracks and the operation of trains, cars, and engines at this point, the presumption must be, in the absence of evidence to the contrary, that he did his duty and acted within his order or instructions.

The duty involved in such a control would be the master's. *Darrigan* v. *New York & N. E. R. Co.*, 52 Conn. 285, 307. It would seem to follow, as the evidence in this case discloses no disobedience of orders, that his act in throwing this switch was done in the performance of the master's duty, and not an act of personal negligence on his part. Whichever conclusion be reached, whether the towerman acted directly for the master, or acted through the order of one acting for the master, the duty involved was the master's. The fellow-servant defense is available against the personal negligence of a coservant; it is never available against the breach of the master's duty.

The legal duty of the defendant company was to exercise reasonable care to give the deceased a reasonably safe place in which to work in view of its character and the dangers attendant upon it. *Worden* v. *Gore-Meenan Co.*, 83 Conn. 642, 648, 78 Atl. 422.

The servant assumes, as a part of his contract of employment, the risks ordinarily incident to it. *Belevicze* v. *Platt Bros. & Co.*, 84 Conn. 632, 637, 81 Atl. 339. Extraordinary risks he does not assume. Had the deceased discovered that a switch-bolt was needed on the main track while he was acting as track-walker, and proceeded to put in the bolt while traffic on the track remained open, the conclusion must be drawn that the risk of being struck by a train running on this track was one of the ordinary risks incident to his every day duty.

In this case the deceased was called upon to work upon a track on which traffic had been suspended owing to a wreck; until the track had been repaired, he might reasonably have assumed traffic would not be renewed. Traffic had been suspended on this track for over nine hours, as he knew. He was still engaged in the necessary work of repair. So long as traffic was suspended, the deceased could work safe from the danger of an engine backing upon him on track two. He could not anticipate this danger before the track was repaired or warning given him. The situation was exceptional. He had been placed at work in a place of safety. Before that could have been made one of danger he was entitled to notice. A failure to give him such notice was a breach of the master's duty to give him a reasonably safe place to work in. That duty the defendant could not delegate; it must perform. *Rincicotti* v. *O'Brien Contracting Co.*, 77 Conn. 617, 621, 60 Atl. 115. The risk, as disclosed by the evidence, was an extraordinary one, arising out of an unusual

situation, and was one which the deceased did not assume.

That the jury might have found that the failure to so warn the deceased was either the proximate, or a proximate, cause of the injury to the deceased, admits no serious dispute. Though the jury found, as they might, upon the evidence, that this failure to warn, combined with the engineer's or the towerman's negligence, one or both, were the proximate causes of the injury to the deceased, and though it be conceded that both of these employees were coservants of the deceased in their acts of negligence, the defendant could not upon this ground escape liability.

The master is liable for an injury which is the result of the combined negligence of himself and a fellow-servant of the injured. *Sprague* v. *New York & N. E. R. Co.*, 68 Conn. 343, 353, 37 Atl. 691.

The court, in its charge, submitted the case to the jury upon only one of the causes of negligence alleged, viz: the failure of the defendant to warn the deceased of the approach of the engine. Assuming that such failure was a breach of the master's duty to furnish the deceased a reasonably safe place to work, as we hold, and that this was a proximate cause of the injury to the deceased, the liability of the defendant would arise whether the engineer and towerman were coservants of the deceased or not, or whether their negligence cooperated with such a breach of duty on the part of the master. The court, therefore, committed no harmful error to the defendant in ignoring in its charge a discussion of the relation of the fellow-servant doctrine to the engineer and towerman and in confining the issue to a single ground of negligence. It is quite clear the defendant cannot complain of the court's limitation of the issue.

The theory upon which the court submitted the case

to the jury is stated as follows: "As I stated to you in the outset, the duty devolving upon the defendant in this case was to provide its servants, or Vasensky, a reasonably safe place in which to work. And therefore upon this question I say to you, that if you find that track number two upon the 11th day of February, 1909, had not been in use from four o'clock in the morning until the injury occurred to the deceased, Vasensky, and that he had been working there all the morning and up to the hour of his injury, and if you find that the engine was turned on to track number two without Paul Vasensky's knowledge, or means of knowledge that it was to be so turned upon said track, and his own negligence did not cause or materially contribute to cause his, Vasensky's, injuries, and you also find that the proximate cause of Paul Vasensky's injuries was the failure to give him warning of the approach of the engine when he himself did not have the means of informing himself and take warning that it was coming, then you may find a verdict for the plaintiff." The assignment of error covering this part of the charge is that it is ambiguous, inconsistent, and calculated to mislead the jury. We do not think this portion of the charge is open to this criticism. If the jury find track two had been out of commission, and the deceased knew it and had been working upon it from four o'clock in the morning to the time of injury, and the engine had been turned on track two without his knowledge, or the means of knowledge, the court says, in effect, the jury might find this constituted negligence on the part of the defendant.

The criticism does not reach the point that the court trenched upon the function of the jury, and hence we should not feel justified in finding error upon an unassigned and unclaimed error of this character. But we ought to add that such a criticism, if made in

due form, would not, in our opinion, have been well taken.

The court determined, under a finding to be made by the jury, the standard of duty of the defendant master; it did not determine the conduct of the defendant in the case, but left it to the jury to find. And this course accords with our law. *Peltier* v. *Bradley, D. & C. Co.*, 67 Conn. 42, 49, 34 Atl. 712; *Snow* v. *Coe Brass Mfg. Co.*, 80 Conn. 63, 67, 66 Atl. 881; *Morrissey* v. *Bridgeport Traction Co.*, 68 Conn. 215, 35 Atl. 1126; *Murphy* v. *Derby Street Ry. Co.*, 73 Conn. 249, 253, 47 Atl. 120.

There was abundance of evidence from which the jury might have found the deceased was free from negligence. We think the court submitted the issues of negligence, of proximate cause, and of contributory negligence upon this theory of the case in so plain a way that, despite some portions of the charge which do not have the same degree of clearness, the jury could not have been misled and must have found the facts in accordance with the assumptions made in the charge. If so, a verdict for the plaintiff was an inevitable conclusion.

There is no harmful error in the charge, and the motion to set aside the verdict was properly denied.

In this opinion the other judges concurred.