## LYCURGUS M. SISTARE *vs.* THE CONNECTICUT COMPANY.

Second Judicial District, Norwich, October Term, 1924.
WHEELER, C. J., BEACH, CURTIS, KEELER and KELLOGG, Js.

The plaintiff, while operating his automobile after sundown in a southerly direction on his right-hand side of the highway with a clear vision of eighteen hundred feet, observed the defendant's trolleycar approaching in a northerly direction in the middle of the highway. From previous and accustomed use of the road, the plaintiff knew that at a certain point the defendant's rails deflected from the middle of the road across his path to the side upon which he was driving. He testified that he continued driving at the same speed and without change of direction until he collided with the trolleycar, which was then passing over the deflection. The jury returned a verdict for the plaintiff, which the trial court refused to set aside. *Held* that this was error, since the jury could not reasonably have found that the plaintiff exercised due care.

Argued October 21st—decided December 1st, 1924.

ACTION to recover damages for injuries to the person and automobile of the plaintiff, alleged to have been caused by the negligence of the defendant, brought to the Superior Court in New London County and tried to the jury before *Avery, J.;* verdict and judgment for the plaintiff for $4,500, and appeal by the defendant from the refusal of the trial court to set aside the verdict as against the evidence. *Error and new trial ordered.*

On the trial of this action plaintiff introduced certain testimony, at the conclusion of which defendant made a motion for a directed verdict in its favor, which the court denied; the case was reopened and the plaintiff called one Kram, defendant's motorman, and at the conclusion of his testimony again rested his case, and the defendant renewed its motion for a directed verdict, which was again denied. Plaintiff had a verdict for

$4,500, which defendant moved to set aside, and for a new trial. Defendant's motion was denied by the court, and judgment was entered on the verdict. Defendant's appeal assigns as error the denial of this motion, on the ground that the verdict was against the evidence and contrary to law.

No evidence was introduced by the defendant, but the defendant's counsel requested the court to take judicial notice that on the day of the injury, July 13th, 1923, the sun set at 7:22 standard time. The collision which is the subject-matter of the action occurred on the last-named date, and was between an automobile owned and operated by plaintiff and a street-railway car of the defendant. The point of collision was on Broad Street in the city of New London about one thousand feet south of the intersection of Jefferson Avenue on the north and about eight hundred feet north of the intersection of Morgan Street on the south. There is a clear unobstructed view over the whole extent of this eighteen hundred feet. Coming from the south the tracks of the street railway up to about the scene of the collision are in the middle of the highway, and then by two easy curves each of large radius the track is deflected to the west side of the road. The grade for some distance north and south of the point of collision is about four per cent descending southward. Where the track is in the middle of the street the traveled width of its concrete pavement is thirty-one feet, after the track turns it is about twenty-eight feet.

On the evening of the collision plaintiff was returning from Salem to New London in his automobile driven by him, and was accompanied by a friend. The lights on the automobile were lighted as were those on the car. After he turned into Broad Street from Jefferson Avenue, he proceeded in a generally southerly direction

on the right-hand side of the road with the railway
track on his right.   He noticed the approach of defend-
ant's car from the south and to his left, and also that
there was another automobile straight ahead of him,
which had occupied the same position for several hun-
dred feet.   Just before or at the moment of the collision,
another automobile drew up from behind him.   He
saw the car on the track in a position just south of the
point of the deflection of the track.   The plaintiff
testified that as he came down Broad Street he had
seen a clear road ahead of him on the right with the
exception of the automobile above referred to ahead of
him, that he continued on the right-hand side of the
road, not changing his course toward the middle, until
his automobile was struck by the street car; that he
knew of the deflection and its situation from previous
and accustomed use of the road, and knew that he
was approaching the deflection at the time he saw the
trolley-car, and noticed the position of the latter, and
that he saw the car on the straight track before he
reached the deflection, and knew that he had not
crossed the latter; that the automobile ahead of him
was distant from seventy-five to one hundred and
twenty-five feet; that he continued on his course at the
same speed as before, and that the next thing he knew
the car and his automobile were in collision; that he
did not see the automobile ahead cross the deflection
or pass the trolley-car; that with the exception of this
automobile he had seen a clear road to his right, and
saw the trolley-car on the straight part of the road
before it reached the deflection; that it swung toward
him, while he pursued a straight course; that afterward
all he saw was the light of the car when the vehicles
were only two or three feet apart; that he did not
remember actually seeing the tracks that evening; and
that he was driving at the rate of about fifteen miles an

hour and so continued without slacking speed until the collision occurred. The testimony of Kram, defendant's motorman, called by plaintiff as above related, was to the effect that he came up Broad Street driving his one-man car at a rate of about twelve miles an hour, at about 8:10 p. m. daylight saving time, under such circumstances that in his belief he could have stopped his car within its length; that he saw the plaintiff's car approaching and started to stop his car by applying the brakes and shutting off the power while on first curve of the deflection and did slack up, and that when he saw plaintiff's automobile start toward the left side of the road as if to cross it, he again applied the power to his car, thinking plaintiff was going to cross behind the trolley-car and that there was room enough to avoid hitting him, but when the witness got to the second curve plaintiff pulled in ahead of the car, and the witness again applied his brakes too late to avoid a collision, and then struck plaintiff's car on its front left-hand fender; that plaintiff was driving at a speed of from twenty-five to thirty miles an hour; that after hitting plaintiff's automobile the trolley-car progressed two feet before coming to a dead stop; that when he came to the first curve of the deflection he saw plaintiff's automobile one hundred and fifty feet northerly of the point of collision.

*Joseph F. Berry*, for the appellant (defendant).

*Arthur T. Keefe*, for the appellee (plaintiff).

KEELER, J. We have in the case before us a stretch of road eighteen hundred feet in length, on which there was an unobstructed line of vision for travelers thereon. There is nothing in the record to show that at or near the time of the collision this line of vision was in any

way obstructed as regards the plaintiff's automobile or the defendant's car, nor that the presence of the other two automobiles on the road, as appears in the statement of facts, in any way prevented the plaintiff or the motorman from getting an accurate and indeed leisurely survey of the situation. The conduct of each of these persons is to be related to this fundamental fact. It was not dark, and each of the colliding vehicles displayed their lights.

To render the verdict which it did, the jury must have found the motorman negligent. There was evidence from which his negligence might reasonably have been found. He testified that he had his car under complete control, practically stopped it once, and then put on his power and went on again because he thought that plaintiff was going to pass him in the rear of his car, and had a chance so to do, and when he found he was in error he had arrived at a point where it was impossible to avoid a collision. With abundant opportunity to make a condition of safety sure, he went ahead on a close calculation of probabilities. This was not ordinary and reasonable care, especially if it be taken to be true, as he himself testified, that the plaintiff was going at a rate of twenty-five or thirty miles an hour.

The principal contention between the parties, however, is concerned with the claimed negligence of the plaintiff. In finding the plaintiff free from contributory negligence the jury came to a conclusion not warranted by the evidence, and which it could not reasonably have found. As we have just said there was from the beginning of the period involved in the transaction no circumstances putting either driver at a disadvantage. Plaintiff saw the trolley-car approaching quite a distance away, while it was still on the straight track in the middle of the road south of the deflection. He

sized the situation and continued on his course at the same speed at which he was previously going.   It is extremely probable that his view so satisfied him as to his proper procedure that he was in the same frame of mind as his companion, who did not give the matter "a second thought."   He says he did not see the tracks on the deflection that day, but he knew just where they were, and he must have known, and in law must be held to have known, that if the vehicles met on the deflection there would be a collision.   He had an opportunity then so to conform his movements to the situation that there would have been no possibility of collision.   Instead of doing this, he proceeded on the right-hand side of the road without changing speed.   The fact pressed by plaintiff's counsel and mentioned by the trial court in the memorandum of decision on the motion to set aside the verdict, that he did not actually see the point where the deflection commenced, is unavailable, since he knew just where the deflection was, and knew that on account of it the trolley-car would soon change its course, and such a change of course with the trolley-car still remaining on his left meant that it would cross his path.   Due care on his part required him to do something more than make an estimate of probabilities, and then go ahead.   Common prudence demanded some further observation, and conformity to the situation as it changed from moment to moment as the cars approached each other.   The defendant's tracks were on the plaintiff's right, he had only to keep them there whether on the straight course or along the deflection to be safe until the trolley-car had passed and then to cross to his proper position on the highway.

No other reasonable deduction could have been made by the jury from the evidence in the case than that there was concurring negligence on the part of both the plaintiff and the motorman, from the time that

either perceived the other.  Each calculated the chances and went ahead; each thought that he could beat the other to the probable place of crossing, and backed his opinion by his conduct, instead of taking measures easily available which would have assured safety.  The negligence of each was a proximate cause of the injury. Such conduct is not due care.  *McCarthy* v. *Consolidated Ry. Co.,* 79 Conn. 73, 76, 63 Atl. 725; *Snow* v. *Coe Brass Mfg. Co.,* 80 Conn. 63, 69, 66 Atl. 881; *Fay* v. *Hartford & Springfield Street Ry. Co.,* 82 Conn. 471, 474, 74 Atl. 779; *McKeon* v. *Connecticut Co.,* 83 Conn. 53, 54, 75 Atl. 139; *Greenhill* v. *Connecticut Co.,* 92 Conn. 560, 562, 103 Atl. 646.

There is error and a new trial is ordered.

In this opinion the other judges concurred.