LOUISE A. HOFACHER *v.* ROBERT FOX ET AL.

BALDWIN, O'SULLIVAN, WYNNE, DALY and BORDON, Js.

Argued January 5—decided March 2, 1955

*Willam L. Hadden,* with whom was *Clarence A. Hadden,* for the appellant (defendant Kaser).

*Louis Evans,* with whom were *Jack H. Evans* and, on the brief, *Morris I. Olmer,* for the appellant-appellee (plaintiff).

*John E. McNerney,* with whom, on the brief, were *Francis J. Moran* and *Albert R. Moquet,* for the appellees (named defendant et al.).

DALY, J.   The plaintiff brought this negligence action against the defendants Robert Fox, Connecticut Zionist Region, Inc., and Eugene H. Kaser to recover damages for injuries sustained by her while riding as a passenger in an automobile owned and operated by Kaser.  The jury returned a verdict for the plaintiff to recover $30,000 from the defendant Kaser and in favor of the defendants Connecticut Zionist Region, Inc., and Fox.  From the judgment rendered thereon the defendant Kaser and the plaintiff have appealed.

We first discuss Kaser's assignment that the court erred in refusing to set aside the verdict on the ground that it was not supported by the evidence. The jury could reasonably have found the following facts:   Whitney Avenue, a public highway in the town of Cheshire, runs north and south.  Brooksvale Road, running east and west, intersects Whitney Avenue on its west side only.  Cook Hill Road, also running east and west, joins Whitney Avenue on its east side only.   The southerly side of Cook Hill Road and the northerly side of Brooksvale Road are on a substantially straight line.  The place where Whitney Avenue and Brooksvale Road meet is called Ives Corner.  Whitney Avenue is part of route 10, the College Highway, and is a main traffic artery from New Haven northward.  It is a two-lane highway, thirty-eight feet wide between guardrails.  The surface is black macadam, with hardened shoulders covered by loose sand between the traveled portion of the highway and the guardrails on both sides. The easterly shoulder is five feet wide.  The avenue

is practically level where it meets Brooksvale Road and Cook Hill Road. A stop sign, facing traffic entering Whitney Avenue from Brooksvale Road, is located on the southwest corner of Whitney Avenue and Brooksvale Road. A crossroad sign, facing northbound traffic on Whitney Avenue and warning of the intersection at Ives Corner, is located on the easterly side of Whitney Avenue about 350 feet south of Brooksvale Road. Whitney Avenue has a slight downgrade from a point about 700 feet south of Brooksvale Road.

On October 4, 1952, at approximately 3:45 p.m., the plaintiff was a passenger in an automobile owned by the defendant Kaser and operated by him in an easterly direction on Brooksvale Road. The defendant Fox was operating an automobile owned by the defendant Connecticut Zionist Region, Inc., with its consent and authority, in a northerly direction on Whitney Avenue. This automobile is hereinafter referred to as the Fox car. The weather was clear, the pavements were dry and visibility was good for a considerable distance in all directions. Kaser brought his car to a stop at or near the stop sign, with the front of the car extending one foot into Whitney Avenue, looked to his right and saw the Fox car coming north on Whitney Avenue at least 300 feet away. Kaser's car remained stationary for a period of not more than eight seconds while a northbound car and a southbound car passed on Whitney Avenue. Kaser intended to drive across Whitney Avenue into Cook Hill Road and was in a hurry to do so. Although he had no idea of the speed of the Fox car and had a clear view of it, he decided to take a chance and cross Whitney Avenue. Without looking again to his right, he gave his accelerator "a good push" and

started across the highway. The Fox car was then approaching at a speed of between thirty-five and forty miles per hour. By the time Kaser's car reached the center line of Whitney Avenue, its speed was between fifteen and twenty miles an hour. Except for two feet of its rear end, the car was across the highway and into Cook Hill Road when its rear right side was struck by the front end of the Fox car. Kaser was familiar with Ives Corner.

Although Fox had a clear and unobstructed view of Ives Corner from the time he was 700 feet south of it, he did not see the Kaser car until it was about in the middle of Whitney Avenue. His car was then between 75 and 100 feet south of Brooksvale Road. He applied the foot and emergency hand brakes and reduced his speed. In doing so, he pulled the emergency brake so forcefully that it came out of its socket. He had done nothing, prior to seeing the Kaser car, to avoid the collision. The Fox car skidded seventy feet after the brakes were applied. The posted speed limit on Whitney Avenue in the vicinity of Brooksvale Road and Cook Hill Road is thirty-five miles per hour. Fox neither saw the crossroad warning sign nor reduced his speed when he passed it. He offered no explanation of why he failed to see the Kaser car. His car hit the Kaser car with sufficient force to turn it around so that it ended up heading south. The Fox car did not come to rest after the collision until it was stopped by a wire cable highway fence. Fox had, on prior occasions, driven in the vicinity of Ives Corner more than twenty times. The plaintiff was very seriously injured as a result of the collision.

The legal liability of Kaser would be the same whether the verdict and the judgment were against him alone or against him and the other defendants.

*Rode* v. *Adley Express Co.,* 130 Conn. 274, 280, 33 A.2d 329; *Rose* v. *Heisler,* 118 Conn. 632, 633, 174 A. 66; *Goodhue* v. *Ballard,* 122 Conn. 542, 546, 191 A. 101; *Sullivan* v. *Krivitsky,* 100 Conn. 508, 511, 123 A. 847. Consequently, in passing upon the assignment of error under discussion, we are only called upon to determine whether the jury could reasonably have imposed liability upon Kaser. His conduct between the time he brought his automobile to a stop at or near the stop sign on Brooksvale Road and the time of the collision was determinative of the question of negligence on his part. The fact that Kaser started his car, when he knew that the Fox car was approaching from his right and when he had no idea of its speed, and proceeded into and across Whitney Avenue at the speed he did without again looking to his right warranted the jury's finding that his conduct was negligent. He had an opportunity so to conform his movements to the situation that there would have been no possibility of collision between his car and the Fox car. Due care on his part required him to do something more than make an estimate of the probability and then go ahead. Common prudence demanded some further observation and conformity to the situation as the cars approached each other. *Sistare* v. *Connecticut Co.,* 101 Conn. 459, 464, 126 A. 688.

Whether the plaintiff's injuries, following the negligent conduct of Kaser, were proximately caused by his negligence depends upon whether they are traceable in causal relation to it. The test is whether Kaser's conduct was a substantial factor in causing the plaintiff's injuries. *Mahoney* v. *Beatman,* 110 Conn. 184, 197, 147 A. 762. This question was fairly one of fact for the jury. *Roden* v. *Connecticut Co.,* 113 Conn. 408, 413, 155 A. 721. We cannot say that

the jury were unreasonable or illogical in reaching their conclusion as to Kaser's liability to the plaintiff.

In a request to charge, Kaser asked the trial court to charge the jury that, under our law, the presence of the stop sign required any motor vehicle, before entering Whitney Avenue from Brooksvale Road, to come to a complete stop and that, if the jury found from the evidence that he had brought his motor vehicle to a complete stop before entering the intersection, he had fully complied with this requirement. The court did so charge the jury and further instructed them that if they found that Kaser had failed to bring his car to a stop before entering the intersection that failure would constitute a violation of law and amount to negligence. An exception was taken by Kaser's counsel on the ground that there was absolutely no evidence of any kind sufficient to warrant the jury's finding that Kaser did not stop. Since, by his request to charge, Kaser induced the trial court to instruct the jury as it did, he is not now in a position to press his claim that the court erred in doing so. *Rinalli* v. *Kurtz*, 117 Conn. 165, 170, 166 A. 916; Maltbie, Conn. App. Proc., § 21(b).

Kaser also claims that the court erred in not further charging the jury that, if they found he did not stop at the stop sign, that fact could be considered by them solely in connection with the problem of whether or not the defendant Fox was negligent. Kaser neither requested the court so to charge nor objected on the ground that it failed to do so. For this reason we do not consider this assignment of error. Practice Book § 153.

The plaintiff stated that she would not press her appeal if no error was found on that of the defend-

ant Kaser. This amounts to a conditional withdrawal of the appeal. The condition has been fulfilled since no error has been found on Kaser's appeal. The judgment of this court should therefore state that the plaintiff's appeal has been withdrawn.

There is no error on the defendant Kaser's appeal; the plaintiff's appeal has been withdrawn.

In this opinion the other judges concurred.