## Patricia A. Tough et al. *v.* Howard S. Ives, Highway Commissioner

House, C. J., Thim, Shapiro, Loiselle and O'Sullivan, Js.

Argued November 3, 1971—decided January 26, 1972

*Robert L. Trowbridge* and *Paige J. Everin,* assistant attorney general, with whom were *James T. Healey,* and, on the brief, *Robert K. Killian,* attorney general, and *Jack Rubin,* assistant attorney general, for the appellant-appellee (defendant).

*Charles G. Albom* and *Richard S. Levin,* with whom, on the brief, was *Theodore I. Koskoff,* for the appellee-appellant (named plaintiff).

LOISELLE, J.   The plaintiff, Patricia Tough, brought this action in two counts to recover damages for personal injuries alleged to have been due to the breach of a statutory duty of the defendant state highway commissioner.   The following is a brief, procedural history of the action.   The trial court sustained a demurrer to the first count prior to trial. A so-called second complaint, filed by the plaintiff's

father, was withdrawn just before trial. The jury returned a verdict for the defendant, which was accepted by the court. Thereafter the court, on motion of the plaintiff, granted a mistrial. The court denied the defendant's motion for judgment in his behalf; the defendant then moved in this court for an order directing the trial court to either render judgment on the verdict returned by the jury or set aside that verdict. This court granted the motion; *Tough* v. *Ives,* 159 Conn. 605, 268 A.2d 371; and the trial court set aside the verdict and ordered a new trial. The defendant appealed from the order setting aside the verdict; the plaintiff appealed from the judgment sustaining the demurrer to the first count and filed a cross-appeal and a bill of exceptions.

In support of his appeal, the defendant claims error in the action of the trial court in setting aside the verdict. In the absence of a statement in the finding of the trial court's conclusions with respect to the verdict, we consult its order setting aside the verdict and ordering a new trial to ascertain the basis of its ruling. In its order setting aside the verdict, the court adopted the reasoning of its memorandum of decision on the motion for mistrial. See *Marin* v. *Silva,* 156 Conn. 321, 324, 240 A.2d 909; *Teitelman* v. *Bloomstein,* 155 Conn. 653, 659, 236 A.2d 900. The memorandum stated the trial court's belief that the so-called "Chip Smith" charge *(State* v. *Smith,* 49 Conn. 376, 386) obstructed a fair rendering of a unanimous verdict and interfered "with the jury's freedom of deliberation."

In order to test that judgment in its proper, factual context we look to the finding. Practice Book § 609; *Wooster* v. *Wm. C. A. Fischer Plumbing & Heating Co.,* 153 Conn. 700, 703, 220 A.2d 449; see

*Gesualdi* v. *Connecticut Co.*, 131 Conn. 622, 632, 41 A.2d 771. According to the finding, the jury, after deliberating for some time, returned to the court and announced that they were unable to reach a unanimous verdict. The court then gave the "Chip Smith" charge. Neither party took exception. The court, in concluding the charge, stated: "Now, this is standard procedure. I don't want you to discard your own personal feelings or judgment but I do ask you to go back once again, listen carefully to each other, do your best to see if you can't reach some resolution of this matter." After an additional hour and thirteen minutes of deliberation, the jury reached a verdict, which the clerk announced, for the defendant. The court accepted the verdict and ordered it recorded. It then allowed the clerk to poll the jury. To the question: "What is your verdict?" one juror answered: "For the plaintiff." The court then asked the juror: "Are you for the state or for the lady?" The juror replied: "For the lady." After the clerk had polled all of the jurors, the following occurred:

"The Court: I wonder, Miss Baggish, whether you understood the question. Was this verdict unanimous, Mr. Foreman, as far as you knew?

Mr. Giansanti: Yes, Your Honor.

The Court: Then what did you mean, Miss Baggish, by saying you were for the lady?

"Miss Baggish: Well, you told us to try to come to a unanimous conclusion by weighing the facts and perhaps considering that the other jurors had more in their favor and in that event I went along with the jury.

The Court: So you did vote finally for the defendant?

Miss Baggish: Right.

The Court: And what you meant to say, I gather then, was that originally you felt the other way.

Miss Baggish: That is right.

The Court: But you now finally do vote for the defendant?

Miss Baggish: Yes.

The Court: Verdict is accepted and recorded.

Mr. Koskoff: May I have an exception, Your Honor?

The Court: Yes. Once again ask the whole group.

The Clerk: Ladies and gentlemen of the jury, harken to your verdict as accepted and ordered recorded by the Court, case number 143825, Patricia Tough, et al versus Howard S. Ives, State Highway Commissioner, dated March 14, 1968, defendant's verdict, in this case the jury finds the issues for the defendant, signed by the foreman, James E. Giansanti. Ladies and gentlemen of the jury, is this your verdict? So say you all.

The Jury: Yes."

The court followed approved procedures in receiving the verdict. The clerk read the verdict, the jury assented to it, the court accepted it and ordered it recorded. *Ferris* v. *Hotel Pick Arms, Inc.,* 147 Conn. 72, 74, 157 A.2d 106.

Since *State* v. *Smith,* 49 Conn. 376, 386, we have consistently reaffirmed our approval of a supplementary charge to encourage a verdict, in both criminal and civil cases, in the face of an apparent deadlock. *Szlinsky* v. *Denhup,* 156 Conn. 159, 162, 239 A.2d 505; note, 19 A.L.R.2d 1257, 1258. We repeat the language in *State* v. *Walters,* 145 Conn. 60, 63–64, 138 A.2d 786, cert. denied, 358 U.S. 46, 79 S. Ct. 70, 3 L. Ed. 2d 45: "The attack on the charge from *State* v. *Smith* [49 Conn. 376, 386] on the ground that it amounted to a direction that the verdict be

whatever a majority of the jurors thought is without semblance of merit. The accuracy of the charge as a statement of the jurors' duty is not open to question. Its use has been approved by the Supreme Court of the United States. *Allen* v. *United States,* 164 U.S. 492, 501, 17 S. Ct. 154, 41 L. Ed. 528. Better than any other statement which has come to our attention it makes clear the necessity, on the one hand, of unanimity among the jurors in any verdict, and on the other hand the duty of careful consideration by each juror of the views and opinions of each of his fellow jurors, something without which no intelligent body of twelve would be likely to reach a unanimous result in any case where there was any substantial factual dispute. *Allen* v. *United States,* supra. For practical reasons only, its use has customarily been deferred until after a disagreement has been reported. *State* v. *Schleifer,* 102 Conn. 708, 725, 130 A. 184. But after the foreman reported the disagreement the situation confronting the court practically required the giving of the charge. *State* v. *Wyman,* 118 Conn. 501, 506, 173 A. 155; *State* v. *Bradley,* 134 Conn. 102, 112, 55 A.2d 114."

It is apparent from the trial judge's memorandum of decision that his sole ground for setting aside the verdict and ordering a new trial was his belief that the "Chip Smith" charge was prejudicial. The plaintiff, however, further claims that the court erred in interrogating the juror, as recited above, and requiring an explanation for her dissent, citing *Bruce* v. *Chestnut Farms–Chevy Chase Dairy,* 126 F.2d 224, 225 (D.C. Cir.), and *Patterson* v. *Rossignol,* 245 A.2d 852, 855 (Me.). These cases envision heavy-handed conduct which coerces the juror or ignores his decision. In the *Bruce* case, for example,

the court accepted a verdict as unanimous when a juror at no time would assent to it.

Neutral inquiry by the trial judge as to the meaning of a juror's response is not erroneous. See *United States* v. *Brooks,* 420 F.2d 1350, 1353 (D.C. Cir.) *Smith* v. *S & F Construction Co.,* 62 Wash. 2d 479, 383 P.2d 300; 5A Moore, Federal Practice (2d Ed.), p. 2239; notes, 71 A.L.R.2d 640, 25 A.L.R.3d 1149. Only when such inquiry is coercive or seeks explanations, motives or information about occurrences in the jury room should it be found objectionable. The action by the trial court here at issue is wholly different. In the case at bar, there was no argument, by either court or counsel, with the juror. Nor did the court require an explanation from the juror as to whether she changed her mind or the reasons therefor. The questions asked sought only to elucidate the meaning of her statement; there was no further inquiry. When the juror stated that her verdict was for the defendant, there was no reason to send the jury back for further deliberations and the court was not in error in accepting the verdict.

Absent coercive circumstances surrounding the charge, which we do not find here, we are satisfied that the so-called "Chip Smith" charge does not work to deprive a party of his right to a unanimous verdict rendered on the conscientious consideration of each juror. The court, therefore, was in error in setting aside the verdict and ordering a new trial. As this error is dispositive of the defendant's claim for directing reinstatement of the verdict, his other assignments of error are not considered.

The plaintiff claims that even if the defendant prevails in his appeal, a new trial should be ordered due to errors of the court as outlined in the assign-

ments of error supporting her cross appeal. In considering these assignments, we look to the finding, as the errors claimed, except that concerning the demurrer sustained prior to the trial which will be discussed later, are errors in rulings on evidence, in the failure to charge as requested, and in the charge itself.

Relevant to the consideration of the assignments of error, which have not been abandoned, are these claims of proof by the plaintiff. The plaintiff was a passenger in the car of Rachel Koziba when she left Cromwell to travel to New Britain on December 5, 1964. En route, Rachel Koziba entered the traveled surface of a bridge, which was also a state highway, on route 72, lying about seven tenths of a mile east of the route 71 overpass, and her car spun around on ice, which covered the entire surface of the bridge, and hit a guardrail. The proximate cause of the spinning was the icy surface of the bridge, constituting a defect in the highway, which was not reasonably safe for traffic. At about 2:15 p.m., Walter W. Wagner was traveling on route 72 and, seeing the Koziba car stopped on the highway, tried to avoid it. Because of the ice on the bridge, he could not prevent a collision, but his vehicle slowed sufficiently to strike the Koziba car only slightly. The proximate cause of Wagner's colliding with the Koziba car was the icy condition of the bridge. As a result of the collision, the plaintiff is a quadraplegic and has suffered devastating injuries. At 11 a.m. on December 5, 1964, the road surface of the westbound portion of the bridge on route 72 was not sanded and was not reasonably safe for travel. From 11 p.m. on December 4, 1964, until 3 p.m. on December 5, 1964, the temperature was 32° F. From midnight, December 4, 1964, until 3 a.m. on Decem-

ber 5, 1964, there was light drizzle and occasional rain. The highway department knew these facts and that the bridge would normally freeze before the remainder of the road surface. It also knew, at 2 a.m. on December 5, 1964, that the surface of route 72 was frozen. The only highway department crew servicing route 72 went home at noon on December 5, 1964, and the department has no record that route 72 was ever sanded on December 4, or 5, 1964, although the department maintained a stock of sand one and one-half miles from the scene of the accident.

At the start of the trial, the plaintiff's counsel reported to the court that a companion case, brought by the plaintiff at about the same time as this action, had been settled and withdrawn. The complaint in that case charged the operators of the two cars involved in the accident, Koziba and Wagner, with actionable negligence, proximately causing the injuries for which she now seeks recovery from the defendant. The defendant relied on the plaintiff's receipt of $39,450 from the operators as a special defense and the plaintiff admitted partial satisfaction of her claim in that amount. During the course of the trial, the plaintiff denied any knowledge of the specific claims of negligence made against the operators, stating: "I left everything up to my lawyer." The court admitted into evidence the complaint in the companion case as an admission that the two operators were at least concurrently responsible for the plaintiff's injuries. The plaintiff objected and took an exception and, on admission of the complaint, offered as evidence the covenants not to sue which she had executed when she received the $39,450. The court excluded the covenants and the plaintiff took an exception.

The plaintiff claims error in the court's admitting into evidence the complaint from the companion case, excluding the covenants not to sue, charging as it did regarding these documents, and refusing to charge on them according to her written requests.

The court properly admitted into evidence the complaint from the companion action. It was admissible as an admission because it is a statement by a party in a prior action to which he was also a party. *Kucza* v. *Stone,* 155 Conn. 194, 197, 230 A.2d 559; *Hill* v. *Small,* 129 Conn. 604, 605, 30 A.2d 387; *Bartolotta* v. *Calvo,* 112 Conn. 385, 395, 152 A. 306; *Wilcox* v. *Downing,* 88 Conn. 368, 375, 91 A. 262; *Connecticut Hospital for Insane* v. *Brookfield,* 69 Conn. 1, 5, 36 A. 1017. The plaintiff seems to agree with this position, claiming only that it should not extend to a plaintiff's conflicting allegations, in nearly contemporaneous actions, against two or more defendants who can be liable only in the alternative. We have found no authority for this proposition and the plaintiff has offered none. The rule concerning the admissibility into evidence of admissions in pleadings is too well established in law and sound in reason to be modified as the plaintiff urges. The time has passed when allegations in a pleading will be treated as mere fictions, rather than "as statements of the real issues in the cause and hence as admissions of the parties." 2 Jones, Evidence (5th Ed.), p. 693; see also 4 Wigmore, Evidence (3d Ed.), pp. 52–54.

It is not clear at what point in the trial the plaintiff first attempted to introduce into evidence the two covenants not to sue, but the second attempt occurred after the defendant had introduced the complaint of the companion case. The plaintiff pressed for this admission on the ground that, as

the complaint was before the jury, the covenants should be admitted to rebut the defendant's claim that the settlements from the companion case were evidence tending to prove at least the concurring negligence of the two operators. The two covenants not to sue are included in the plaintiff's appendix and are alike. They are signed only by the plaintiff and her father and witnessed by her attorneys. They contain standard language, except for a hearsay statement, attributed to each of the operators, which denies their liability and "says further that said accident was solely due to the slippery, icy condition of the bridge at said location which condition was caused by the failure of the Highway Commissioner to discharge his statutory obligation." These hearsay statements were clearly inadmissible. Each declaration is a representation within the exclusionary hearsay rule since it was "a statement out of court by one not a party to this action, offered to affect the defendant, not itself a party to the contract." *Brown* v. *Connecticut Light & Power Co.,* 145 Conn. 290, 294, 141 A.2d 634. "The reason for the rule is basically that the sanction of an oath and the test of cross-examination are absent. While there are many exceptions to the rule, in general they have been created where the statements are made under conditions deemed to render them equal in reliability and trustworthiness to those which are made under the sanctions prescribed." *General Motors Acceptance Corporation* v. *Capitol Garage, Inc.,* 154 Conn. 593, 597, 599, 227 A.2d 548. Because no such exception or requisite safeguard is present here, the statements are inadmissible. Ibid., 599; McCormick, Evidence, pp. 588–589. The remaining portions of the covenants not to sue were inadmissible as self-serving hearsay declarations, made out

of court and not composed until shortly before trial. *Pluhowsky* v. *New Haven,* 151 Conn. 337, 342, 197 A.2d 645; *State* v. *McCarthy,* 133 Conn. 171, 181, 49 A.2d 594.

When the court charged the jury on the issue of sole proximate cause, it discussed the claim of the defendant that the complaint in the companion case was an admission of at least concurring negligence by the two operators. The court instructed that the admission was not binding on the jury and stated: "[Y]ou may consider it and give it whatever weight you think it should deserve." The court then instructed the jury that a compromise in the companion case had no legal effect on the present suit and that it was not an admission of liability by the operators of the cars involved. This charge complied substantially with the request to charge. The court terminated this portion of the charge by stating: "So this compromise under the so-called covenant not to sue that has been pleaded has no binding or probative force upon you. You may weigh the claims made in that case by Patricia Tough through her counsel, but the mere fact of compromise or settlement does not in any way decide this case. You may give it whatever weight you want to." The plaintiff claims that the last, quoted sentence destroyed the effect of the otherwise correct instruction on compromise. We do not agree with this claim. It is apparent from the context of the sentence that the court referred to the claims made in the companion case by Patricia Tough through her counsel and not to the covenants not to sue. The antecedent of "it" in the sentence at issue is easily traced to the immediately preceding sentence, by the parallel language of the initial and the subsequent reference: "you may weigh the claims" and

"you may give it whatever weight." If the plaintiff had been under the impression that this sentence was ambiguous or actually referred to the covenants not to sue, she should have brought it to the attention of the court and have asked that the sentence be clarified. This procedure is required to insure the trial court an opportunity to cure any defects or ambiguities in the charge, thereby avoiding the inconvenience and expense of unnecessary retrials. No exception was taken to the charge, and we find no error. Practice Book § 249; *Prystash* v. *Best Medium Publishing Co.,* 157 Conn. 507, 512, 254 A.2d 872; *Towhill* v. *Kane,* 147 Conn. 191, 193, 158 A.2d 251; *D'Addario* v. *American Automobile Ins. Co.,* 142 Conn. 251, 256, 113 A.2d 361.

The plaintiff also claims that the jury should not have been informed of any payment from the settlement of the covenants not to sue and that the practice now followed in our courts concerning payments under covenants not to sue (see *Bonczkiewicz* v. *Merberg Wrecking Corporation,* 148 Conn. 573, 578, 172 A.2d 917) is in error. The plaintiff argues that the jury should be unaware of any payments; that, when the verdict is rendered, the amount received under a covenant not to sue should be subtracted by the court; and that this reduced sum should be entered in the judgment. When the defendant had pleaded the existence of payments under the covenants not to sue, the plaintiff replied and admitted such payments. The record discloses that the plaintiff did not except to this portion of the charge or make a written request that the charge omit any mention of payment on the covenants not to sue. Consequently, we do not consider this claimed error. Practice Book §§ 249, 251, 252; *Gulia* v. *Ortowski,* 156 Conn. 40, 44, 238 A.2d 396; *State* v. *Mallette,* 153 Conn.

584, 587, 219 A.2d 447. Furthermore, the written request which the plaintiff gave to the court on this issue is substantially that which the plaintiff now claims as error. The plaintiff may not now complain of an instruction when she had specifically sought that instruction in her request to charge. *Quednau* v. *Langrish,* 144 Conn. 706, 715, 137 A.2d 544; *Hofacher* v. *Fox,* 142 Conn. 179, 185, 112 A.2d 217; *Chapin* v. *Popilowski,* 139 Conn. 84, 88, 90 A.2d 167; Maltbie, Conn. App. Proc. § 96, p. 117.

The remaining attack of the plaintiff on the charge is that the court failed to relate properly the application of the law to her contentions of fact in the case. The primary purpose of the charge is to assist the jury in applying the law correctly to the facts which they might find to be established. *Vita* v. *McLaughlin,* 158 Conn. 75, 77, 255 A.2d 848; *Worden* v. *Francis,* 153 Conn. 578, 579–80, 219 A.2d 442. The extent to which a court should comment on the evidence is largely a matter within its sound discretion. *Worden* v. *Francis,* supra, 580; *Morosini* v. *Davis,* 110 Conn. 358, 363, 149 A. 371. In some cases, where the issues are complicated, peculiar, or capable of differing conclusions, comment by the court is necessary. On the other hand, if the issues are clearly enumerated and the argument of counsel has fairly presented the case, a discussion in the charge of the details of the evidence may defeat its proper purpose. *Corrievau* v. *Associated Realty Corporation,* 122 Conn. 253, 256, 188 A. 436; *Heslin* v. *Malone,* 116 Conn. 471, 478, 165 A. 594.

The plaintiff submitted requests to charge that cover seventeen pages of the record. Among the requests the plaintiff now claims the court should have given are those which concern details of the evidence tending to prove her claim that the bridge

was icy and slippery. The court correctly instructed the jury as to what constitutes a defect and also stated: "But I do recall the final arguments where it seems to be conceded that there was a slippery condition there and that there was some degree of ice or glare, so-called, or call it what the witnesses called it, that was dangerous for public travel. Of course, the defect by itself is not enough to establish liability on the highway commissioner. But I do believe that in the final summation by counsel, we have not too much disagreement about that being slippery and being icy." This statement was, certainly, not unfavorable to the plaintiff. The plaintiff also claims error in the court's failure to charge that the evidence indicated that the bridge had a propensity to be more dangerous than the remainder of the road. The court correctly charged on the issues of actual and constructive notice and, in commenting on constructive notice, referred to the plaintiff's allegation that the bridge had a propensity to become icy and slippery sooner than other portions of the highway. It charged that "notice of conditions naturally productive of a defect which subsequently do, in fact, produce the defect, is not the type of notice that the law requires." This was a correct statement of the law; if the court had charged as requested, it would have been in error. *Monahan* v. *Montgomery*, 153 Conn. 386, 390, 216 A.2d 824; *White* v. *E & F Construction Co.*, 151 Conn. 110, 114, 193 A.2d 716; *New Britain Trust Co.* v. *New York, N.H. & H.R. Co.*, 145 Conn. 390, 393, 143 A.2d 438.

On the issues of reasonable care and notice, the plaintiff requested the court to charge: (1) That the question was not only whether the defendant's agents sanded the bridge, but "whether they did it properly and sufficiently," and whether reasonable

care required the defendant's agents to resand or salt the bridge prior to the accident; and (2) that, in determining whether the defendant had fulfilled his duty to "keep" the bridge in a reasonably safe condition, the jury could consider the proximity of equipment and sand to the location of the accident. While the court did not charge in the language requested, it stated eight times during the charge that the duty of the defendant, after actual or constructive notice of a defect, is to use reasonable effort to employ means to make highways safe, or words to that effect. At the request of the jury, the court twice repeated the portion of the charge dealing with liability. The jury were explicitly instructed that it was their exclusive function to decide all questions of fact, that it was for them to pass on the credibility of witnesses, that their recollection of the evidence would control and that it was in their province to determine what reasonable inferences were to be drawn from the facts proven. The charge specifically instructed the jury on the duty of the defendant after notice of the defect. It made sufficient reference to the claims of the parties to guide the jury adequately in the application of the principles of law to the facts involved. "Ordinarily it is not incumbent upon the trial court, in charging the jury, to call their attention to specific portions of the evidence as supporting or refuting a claim; it is enough if they are instructed to take into account all the evidence bearing upon disputed points in the case." *Tetreault* v. *Connecticut Co.,* 81 Conn. 556, 559, 71 A. 786; *State* v. *Journey,* 115 Conn. 344, 350, 161 A. 515; *Hart* v. *Knapp,* 76 Conn. 135, 137, 55 A. 1021.

Another error in the charge claimed by the plaintiff is in the instruction on the burden of proof con-

cerning negligence, or freedom from negligence, and the contributory negligence necessary to bar the plaintiff from recovery. After the jury had been given the whole charge on liability for the second time, and on a further question from the jury as to who had the burden of proving the concurring negligence of the operator of the car in which the plaintiff was a passenger, counsel for the plaintiff urged the court not to charge the jury again on the issue of burden of proof, as the court had "charged on the burden of proof adequately and sufficiently twice." The court again instructed the jury on the burden of proof. When the jury retired, counsel for the plaintiff stated: "I have no exception, Your Honor." We find no error in the instruction attacked by this assignment of error.

. Finally, in examining the remaining requests to charge not already considered, there is no doubt that if the court had followed all the requests that the plaintiff urged, with their detailed comment on particular evidence favorable to the plaintiff, it would have been indulging in an argumentative presentation of the claims of only one side. This it should not do. *Ladd* v. *Burdge,* 132 Conn. 296, 299, 43 A.2d 752; *Bundy* v. *Capitol National Bank & Trust Co.,* 124 Conn. 309, 314, 199 A. 561; *Tuckel* v. *Hartford,* 118 Conn. 334, 337, 172 A. 222. The court did not err in failing to review the evidence in the detail requested by the plaintiff.

The plaintiff attacked eight rulings on evidence, the failure to charge according to the plaintiff's request as stated in twenty-nine paragraphs of the finding, the denial of a motion for mistrial as set out in twenty-nine paragraphs of the finding, the failure to find according to two paragraphs of the plaintiff's draft finding, and the finding of two paragraphs

without evidence. Aside from the assignments of error we have already discussed and those which the plaintiff has abandoned, only two assignments of error remain for discussion.

The plaintiff's two final assignments of error are the sustaining of the defendant's demurrer to the first count of the complaint in this action and the finding that this judgment was rendered two years before trial. That count is couched in allegations of negligence against the defendant, with the added claim that Special Acts 1965, No. 349, gave the plaintiff and her father the right to bring an action in which the concurring negligence of anyone other than the plaintiff or her father would not be a defense. This alleged right is enjoyed by no citizen other than the plaintiff and her father. The state demurred on the ground that the count violated article first, § 1 and article second of the constitution of the state of Connecticut and the fourteenth amendment of the constitution of the United States. The court *(Pastore, J.)* sustained the demurrer and the trial judge *(Wright, J.)*, at the commencement of trial, rendered judgment for the defendant on the first count. To the extent that the finding states that judgment on the first count was rendered two years before trial, it is in error; the finding is corrected to reflect the time at which the trial judge rendered judgment.

A preliminary question raised by the plaintiff is whether the defendant, representing the state, has standing to attack the constitutionality of the special act. We held in *Ducharme* v. *Putnam,* 161 Conn. 135, 139, 285 A.2d 318, that a city, although a subdivision of the state, has sufficient interest and standing to raise constitutional issues in a case where it was properly in court on nonconstitutional

questions. The reasoning and cases cited in the *Putnam* case are applicable to the case at bar, and repeating them would serve no useful purpose. The defendant has sufficient legal interest and standing to raise constitutional issues in the present proceeding.

The questions which involve article first, § 1 of the constitution of the state of Connecticut and the fourteenth amendment of the constitution of the United States, which prohibit the states from denying to any person the equal protection of the laws, are dispositive and may be considered together. *Proctor* v. *Sachner,* 143 Conn. 9, 17, 118 A.2d 621; *Lyman* v. *Adorno,* 133 Conn. 511, 515, 52 A.2d 702.

Article first, § 1 of the constitution of Connecticut declares: "All men when they form a social compact, are equal in rights; and no man or set of men are entitled to exclusive public emoluments or privileges from the community." The broad provisions of article third, § 1 of our constitution vest the legislative power in the General Assembly, but that power is subject to the limitation that an act which serves no other purpose than an individual's gain or profit goes beyond the power of that body to enact and is necessarily void. Only if an act serves some public purpose can it be constitutionally sufficient. *Lyman* v. *Adorno,* supra. Because the elements of a public purpose vary as much as the circumstance in which the term is appropriate, each case must be determined on its own peculiar facts. *Barnes* v. *New Haven,* 140 Conn. 8, 15, 98 A.2d 523. In general terms, if a legislative act will promote the welfare of the state, it is for a public purpose. *Lyman* v. *Adorno,* supra, 517.

The legislative act, moreover, may not establish classes that have no reasonable relation to any per-

missible, public purpose. This does not, of course, prevent the legislature from dealing differently with different classes of people. It means only that classifications must be based on natural and substantial differences, germane to the subject and purpose of the legislation, between those within the class included and those whom it leaves untouched. *Lyman* v. *Adorno,* supra, 521; *State* v. *Cullum,* 110 Conn. 291, 295, 147 A. 804.

Differences of treatment under law should not be approved when they are based on classifications unrelated to the legislative purpose. Special Act No. 349 of the 1965 session of the legislature created a right of action based on common-law negligence for the sole benefit of the plaintiff and her father. It established a right available only to two persons, designated by name. Equal protection of the laws is absent when Patricia Tough is allowed to recover on a basis unavailable to another incurring identical injuries in an identical manner and differing from her in name only. Although we are not unmindful of the seriousness of the plaintiff's injuries, we cannot escape the conclusion that the right created was purely personal, without public purpose either expressed or implied and based on an unreasonable classification.

Even though the right granted to the plaintiff is deemed to be personal, the plaintiff claims that such right can be granted when the circumstances warrant. The plaintiff cites *Wheeler's Appeal,* 45 Conn. 306, 318; *Sanger* v. *Bridgeport,* 124 Conn. 183, 189, 198 A. 746; *Lyman* v. *Adorno,* 133 Conn. 511, 528, 52 A.2d 702; *State ex rel. Higgins* v. *Civil Service Commission,* 139 Conn. 102, 90 A.2d 862; *Tolisano* v. *State,* 19 Conn. Sup. 266, 270, 111 A.2d 562; and *Garrett* v. *State,* 20 Conn. Sup. 496, 498, 141 A.2d

249. Each of these cases involves a situation where at most the remedy, rather than the grounds of the action, was affected; where no right of the opposing party was affected; or where the state recognized an honorary obligation so that substantial justice could be realized. In the case at bar, the special act attempted to create a right, rather than a remedy, which is unrelated to any honorary obligation.

The plaintiff claims that, due to the extremely severe injuries which she suffered, her case properly falls within a special classification which the legislature could lawfully recognize by enacting a statute to aid her in her action against the state. The weakness of this argument is that no such classification was intended. Not all persons suffering severe injuries were to benefit, only the plaintiff. The act is simply a grant of a personal privilege greater than that allowed to the public at large. Special Acts 1965, No. 349 is contrary to article first, § 1 of the constitution of Connecticut and is of no effect. The court acted properly in sustaining the demurrer and rendering judgment for the defendant on the first count.

There is error and the case is remanded with direction to render judgment for the defendant.

In this opinion the other judges concurred.