ANTHONY VECCHIO ET AL. *v.* SEWER AUTHORITY
OF THE TOWN OF BRANFORD

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued November 14, 1978—decision released January 23, 1979

*Charles G. Albom,* for the appellants (plaintiffs).
*Howard F Zoarski,* for the appellee (defendant).

COTTER, C. J. The plaintiffs, Anthony and Sara Vecchio, owners of land in Branford, appealed to the Court of Common Pleas from an assessment of

benefits levied by the defendants for the construction of a town sewage system. The defendant filed a plea in abatement alleging that the court was without jurisdiction to entertain the appeal because the plaintiffs failed to file their appeal within twenty-one days of the filing of the assessment as required by § 7-250 of the General Statutes.[1] The trial court sustained the plea in abatement and, from the judgment rendered thereon, the plaintiffs have appealed.

The court found the following relevant facts: The plaintiffs, by a deed dated September 3, 1974, acquired title to the property in question "subject to . . . sewer assessments, if any; and taxes on the list of 1973, which taxes and sewer assessments the

[1] "[General Statutes] Sec. 7-250. PUBLIC HEARING. APPEAL. No assessment shall be made until after a public hearing before the sewer authority at which the owner of the property to be assessed shall have an opportunity to be heard concerning the proposed assessment. Notice of the time, place and purpose of such hearing shall be published at least ten days before the date thereof in a newspaper having a circulation in the municipality, and a copy of such notice shall be mailed to the owner of any property to be affected thereby at such owner's address as shown in the last-completed grand list of the municipality or at any later address of which the sewer authorities may have knowledge. A copy of the proposed assessment shall be on file in the office of the clerk of the municipality and available for inspection by the public for at least ten days before the date of such hearing. When the sewer authority has determined the amount of the assessment to be levied, it shall file a copy thereof in the office of the clerk of the municipality and, not later than five days after such filing, shall cause the same to be published in a newspaper having a circulation in the municipality. Such publication shall state the date on which such assessment was filed and that any appeals from such assessment must be taken within twenty-one days after such filing. Any person aggrieved by any assessment may appeal to the court of common pleas for the county or judicial district wherein the property is located and shall bring any such appeal to a return day of said court not less than twelve nor more than thirty days after service thereof and such appeal shall be privileged in respect to its assignment for trial. . . ."

grantees . . . assume and agree to pay as part of the consideration." A few months prior to the closing, Anthony Vecchio visited the property in question where he observed sewers being installed in the area. On December 5 and 12, 1974, a legal notice was published in the Branford Review, a local weekly paper, advising that a public hearing was to be held regarding the proposed assessments. Additionally, prior to the public hearing, the defendant mailed notices of the hearing to the owners of the properties affected. That notice was mailed to the plaintiffs at their address as shown on the last completed grand list in the Branford tax assessor's office. On December 23 and 30, 1974, following the public hearing, lists of the sewer assessments levied were filed with the town clerk; and on December 26, 1974, and January 2, 1975, the lists of assessments for residential and commercial properties, respectively, including the property of the plaintiffs, were published in the Branford Review. The defendant also published legal notices on January 16 and 23, 1975, in the Branford Review notifying the public as to when the assessments became due and payable.

The plaintiff Anthony Vecchio, who resides with his wife in Woodbridge, received two bills for the assessments on February 26, 1975, at his Branford mailing address, which was the address of the plaintiffs as listed in the assessor's records. The bills received in the mail on February 26 were the first *mail* notices the plaintiffs received from the defendant relating to the sewer assessment. Thereupon, the plaintiffs immediately commenced the present action challenging the assessment and claiming damages. Since the plaintiffs' appeal from the assessment was not taken within twenty-one days after

the filing as required by § 7-250 of the General Statutes, the trial court sustained the defendant's plea in abatement and dismissed the plaintiffs' action.

The plaintiffs' special defenses to the defendant's plea in abatement may be summarized as follows: (1) Notice by mail of the hearing on the proposed assessment was never given to the plaintiffs as required by § 7-250, and the provision for newspaper publication of notice was not satisfied in this case by publication in the Branford Review; and (2) although the appeal admittedly was not filed within the statutory period, this defect was cured by a special act of the General Assembly which was motivated and justified by equitable considerations. In view of the fact that the plaintiffs conceded, as they must, that their appeal was not timely filed, our review of the trial court's action sustaining the plea in abatement is limited to a determination of the validity of either or both of the special defenses noted above, since the statutory remedy for review must be pursued unless the assessment is void. See *Vaill* v. *Sewer Commission,* 168 Conn. 514, 518–19, 362 A.2d 885. Failure to take a timely appeal from a sewer assessment can only be upheld generally on the grounds of lack of jurisdiction or want of power to make the assessment. *Meriden* v. *Camp,* 46 Conn. 284, 290.

### I

General Statutes § 7-250 provides that, prior to the levy of a sewer assessment, a public hearing shall be held at which the owners of the property affected shall have an opportunity to be heard concerning the proposed assessment. Notice of the scheduled public hearing is to be given through publication "in a newspaper having a circulation in the munici-

pality," and by mailing a copy of such notice to the property owner's address "as shown in the last-completed grand list of the municipality."[2] Once the amount of the assessment to be levied is determined, the sewer authority is required to file a copy of the assessment in the office of the clerk of the municipality and, within five days, to publish notice of the assessment in a newspaper having a circulation in the municipality.

The action initiated by the plaintiffs in the present case was an attempted appeal from the defendant's assessment by which they sought a reduction in the amount of the assessment and other relief pursuant to § 7-250. As such, the plaintiffs were required to file their appeal within twenty-one days of *the date the assessment was filed.* General Statutes § 7-250. Since the plaintiffs admittedly failed to comply with this statutory directive, and because no claim is made that the actual filing of the assessment or subsequent notice thereof was, in any way, insufficient, the plaintiffs' appeal was fatally defective.

By way of special defense, however, the plaintiffs claimed that the appeal period provided by § 7-250 did not begin to run until the bills for the assessment were actually received since notice of the *public hearing* held prior to the actual filing of the assessment was not given to them in the requisite manner. Although such an allegation would be relevant in a collateral action brought by the plaintiffs claiming that, due to insufficient notice, the defendant was without jurisdiction to levy the assessment in the

---

[2] A copy of the proposed assessment is also required to be on file in the office of the clerk of the municipality and available for inspection by the public for at least ten days before the date of the public hearing. See footnote 1, supra.

first instance; see *Vaill* v. *Sewer Commission,* supra, 518–19; *Schwartz* v. *Hamden,* 168 Conn. 8, 14, 357 A.2d 488; *Meriden* v. *Camp,* 46 Conn. 284, 290; where, as here, the validity of the assessment is conceded and the proceedings initiated merely seek an alteration of the amount of the assessment through the remedy of a statutory appeal, challenges directed at the assessment procedure itself cannot operate to validate an otherwise untimely appeal. "A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions by which it is created. *In re Nunez,* 165 Conn. 435, 441, 334 A.2d 898; *Chanosky* v. *City Building Supply Co.,* 152 Conn. 449, 451, 208 A.2d 337; 4 Am. Jur. 2d, Appeal and Error, § 4." *Norwich Land Co.* v. *Public Utilities Commission,* 170 Conn. 1, 6, 363 A.2d 1386. Since such provisions are mandatory, a failure to comply with them renders the appeal subject to abatement. *Norwich Land Co.* v. *Public Utilities Commission,* supra,

In any event, the subordinate facts contained in the finding of the court below amply support its conclusion that the defendant fully complied with the requirements of § 7-250 regarding notice of the hearing concerning the proposed sewer assessment to be levied against the plaintiffs' property. Since the plaintiffs do not dispute that the Branford Review is a "newspaper having a circulation in the municipality," the defendant's compliance with the statutory directive regarding newspaper publication was, on its face, sufficient.[3] The defendant was only

---

[3] It is interesting to note, however, that the court also found, and the plaintiffs have not disputed, that the Branford Review is the only Branford newspaper, that it contains all legal notices for both probate and political activities in the town, and that in the last thirteen years sewer assessments have been published fourteen times and always in the Branford Review.

required to comply with the provisions of the statute —the fact that these plaintiffs may have been more likely to have acquired knowledge of the proposed assessment through publication in another newspaper with a broader circulation in no way vitiates the sufficiency of the notice given here.

Similarly, the court could have properly concluded that the statutory requirement of notice by mail was satisfied in the present case. There was evidence presented to support the court's finding that notice of the public hearing regarding the proposed assessment was sent by mail to the plaintiffs at their Branford address as shown on the last completed grand list in the tax assessor's office of the town of Branford. Failure to receive that notice did not preclude the court from making a determination that it was, in fact, actually sent in accordance with the provisions of the statute.

## II

While the defendant's plea in abatement was pending, a special act was enacted by the General Assembly declaring the plaintiffs' appeal in this case sufficient and purporting to bar the defendant from pleading the time limitation provided in § 7-250 of the General Statutes.[4] This special act was pleaded by the plaintiffs as a special defense to the defendant's plea in abatement. The trial court, however, decided that the legislation was unconstitutional and

---

[4] "[Special Act No. 76-35 (1976)] The appeal of Anthony Vecchio and Sarah Vecchio of the town of Woodbridge, from an assessment by the Branford Sewer Authority on certain land owned by said Anthony Vecchio and Sarah Vecchio in the town of Branford, otherwise valid except that said appeal was not instituted within the time specified by section 7-250 of the general statutes because actual notice of the assessment was not received during such period, is validated and declared sufficient to permit said Anthony Vecchio and Sarah

concluded that the attempted validation by special act was ineffective to reinstate the plaintiffs' right of appeal under § 7-250. Our determination of the validity of the special act in question involves the consideration of article first, § 1, of the constitution of the state of Connecticut which provides: "All men when they form a social compact, are equal in rights; and no man or set of men are entitled to exclusive public emoluments or privileges from the community."

In support of their claim that the special act in the present case does not violate the above constitutional provision, the plaintiffs, citing our decision in *Tough* v. *Ives*, 162 Conn. 274, 294, 294 A.2d 67, contend that, in this case, "at most the remedy, rather than the grounds of the action," was affected by the special act. We cannot agree with this claim since it is clear that the special act extending the time within which the plaintiffs could commence their statutory appeal affected the right, and not merely the remedy, afforded the plaintiffs by § 7-250. See *Hillier* v. *East Hartford*, 167 Conn. 100, 104–105, 355 A.2d 1.

It is the general rule that "where a statute gives a right of action which did not exist at common law, and fixes the time within which the right must be enforced, the time fixed is a limitation or condition attached to the right—it is a limitation of the liability itself as created, and not of the remedy alone."

Vecchio to maintain and prosecute said appeal to final judgment, insofar as said appeal was not instituted within the time specified in said section 7-250. Said Branford Sewer Authority shall be barred from setting up the failure to comply with the provisions of said section 7-250 with respect to the time within which an appeal is required to be instituted and shall also be barred from denying that said appeal was instituted within such time."

*DeMartino* v. *Siemon,* 90 Conn. 527, 528–29, 97 A. 765; *American Masons' Supply Co.* v. *F. W. Brown Co.,* 174 Conn. 219, 224, 384 A.2d 378; *Hillier* v. *East Hartford,* supra, 106. Section 7-250 of the General Statutes provides persons aggrieved by an assessment of the sewer authority with the right to secure judicial review of its action. The right to appeal the decision of this administrative body exists only under statutory authority; *Tazza* v. *Planning & Zoning Commission,* 164 Conn. 187, 190, 319 A.2d 393; *East Side Civic Assn.* v. *Planning & Zoning Commission,* 161 Conn. 558, 560, 290 A.2d 348; and is not founded upon principles of equity embedded in the common law. But see *Karp* v. *Urban Redevelopment Commission,* 162 Conn. 525, 528–30, 294 A.2d 633.[5] Consequently, compliance with the time requirement for taking an appeal pursuant to § 7-250 is a prerequisite to the existence of the right itself; the remedy comes into existence only when the condition precedent imposed by the statute creating it has been complied with.

---

[5] In *Karp* v. *Urban Redevelopment Commission,* 162 Conn. 525, 294 A.2d 633, we held (pp. 528-30) that the time limitation imposed in § 8-132 of the General Statutes for appeals to the court from a statement of compensation filed in connection with an eminent domain proceeding was only a limitation on the *remedy* analogous to the usual statute of limitation. That determination, however, was based upon a recognition that common-law remedies existed to secure just compensation in such cases. The appeals statute under consideration, therefore, did not create a right that would not otherwise be available. *Karp* v. *Urban Redevelopment Commission,* supra, 530.

A special or local assessment, on the other hand, is generally recognized to be an exercise of the taxing power rather than of the power of eminent domain. *Wight* v. *Davidson,* 181 U.S. 371, 21 S. Ct. 616, 45 L. Ed. 900; 70 Am. Jur. 2d, Special or Local Assessments, § 5. There is neither a common-law basis nor a constitutional necessity for review of such levies provided the statutory procedure for imposing the assessment complies with the mandates of due process and equal protection. See *Hibben* v. *Smith,* 191 U.S. 310, 24 S. Ct. 88, 48 L. Ed. 195; 70 Am. Jur. 2d, supra, § 154.

*Hillier* v. *East Hartford,* supra; *Diamond National Corporation* v. *Dwelle,* 164 Conn. 540, 546–47, 325 A.2d 259.

The passage of the special act under consideration, therefore, cannot be sustained on the ground that it affected only the remedy and not the right of the plaintiffs in this case. "It established a right available only to two persons, designated by name"; *Tough* v. *Ives,* supra, 293; and was not merely a curative act affecting a remedy otherwise available to these plaintiffs.

Although we conclude that the special act in question granted to the plaintiffs alone a personal right not generally available to others similarly situated, the plaintiffs argue that such an enactment may be sustained where the existence of moral or equitable grounds can be found which justify the enactment of such special legislation. The plaintiffs rely upon *Sanger* v. *Bridgeport,* 124 Conn. 183, 198 A. 746, in which this court upheld the constitutionality of a special act validating a defective notice to the defendant municipality of an injury caused by a defective sidewalk. In *Sanger,* the plaintiff filed a timely notice which was deficient in form by reason of its preparation by a city employee upon whom the plaintiff relied. Under those circumstances, this court sustained the special act, stating (p. 189): "Municipalities may be compelled not only to recognize their legal obligations but also to discharge those of an equitable and moral nature."

We have since limited *Sanger* to the compelling equitable circumstances discussed therein; *Hillier* v. *East Hartford,* supra, 110; and have restricted these "equitable and moral" considerations to cases where the passage of a special act is based upon the state's

recognition of "an honorary obligation." *Hillier* v. *East Hartford,* supra, 104; *Tough* v. *Ives,* supra, 294. This is not the situation in the present case. No evidence was introduced to show that the plaintiffs were misled by the defendant authority or any municipal employee, and the trial court found that the defendant fully complied with the requirements of § 7-250 of the General Statutes. The claim of the plaintiffs that they did not receive *actual* notice of the assessment, although the statutory requirements were followed, fails to establish such a compelling equitable situation envisioned by our holding in *Sanger* v. *Bridgeport,* supra.

"No enactment creating a preference can withstand constitutional attack if the sole objective of the General Assembly is to grant personal gain or advantage to an individual." *State ex rel. Higgins* v. *Civil Service Commission,* 139 Conn. 102, 106, 90 A.2d 862. In *Tough* v. *Ives,* supra, 292–94, for example, we held that the validating act did not serve any public purpose; that it was for the personal benefit of the plaintiff; that it was unavailable to others similarly situated and was based on an unreasonable classification; and thus had no effect. Accordingly, we hold Special Act No. 76-35 to be in violation of article first, § 1, of our state constitution.

The defendant's plea in abatement was, therefore, properly sustained by the court below.

There is no error.

In this opinion the other judges concurred.