Louis J. Faraci v. Connecticut Light
and Power Company
(13539)

Peters, C. J., Healey, Shea, Callahan and Covello, Js.

Argued February 8—decision released May 9, 1989

*Russell S. Palmer*, with whom was *Averum J. Sprecher*, for the appellant (plaintiff).

*Jonathan F. Reik*, for the appellee (defendant).

SHEA, J. The sole issue in this case is whether General Statutes § 31-308 (d), which excludes workers' compensation for any scar resulting from spinal surgery, violates the equal protection clauses of the fourteenth amendment to the United States constitution and article first, § 20 of the Connecticut constitution.[1]

The parties have stipulated to the facts relevant to this appeal. On December 27, 1984, while employed by the defendant, the plaintiff sustained a compensable injury to his back. Thereafter, the plaintiff underwent spinal surgery for the removal of a herniated interver-

---

[1] Section 1 of the fourteenth amendment to the United States constitution provides in part that no state shall "deny to any person within its jurisdiction the equal protection of the laws."

Article first, § 20, of the Connecticut constitution provides: "No person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his civil or political rights because of religion, race, color, ancestry, national origin or sex."

The plaintiff has acknowledged that the equal protection provisions of the state and federal constitutions have the same meaning and the same limitations. See *Caldor's, Inc.* v. *Bedding Barn, Inc.*, 177 Conn. 304, 314, 417 A.2d 303 (1979).

tebral disc in the lumbar spine. As a result of this surgery, the plaintiff has a nine centimeter vertical scar in the area of the lower lumbar spine.

The plaintiff sought an award under § 31-308 (d) for the scar on his back. Section 31-308 (d) provides that "[i]n addition to compensation for total or partial incapacity . . . the commissioner may award . . . compensation . . . for any permanent significant disfigurement of, or permanent significant scar on, any part of the body . . . but no compensation shall be awarded . . . for any scar resulting from an inguinal hernia operation or any *spinal surgery*." (Emphasis added.) The compensation commissioner determined that the scar was not compensable, because it was "caused by surgery on his spine." The compensation review division upheld that decision, but declined to address the plaintiff's claim that the spinal surgery exclusion in § 31-308 (d) is unconstitutional. This appeal followed.

We note at the outset that the challenge of a statute on constitutional grounds always imposes a difficult burden on the challenger. We have consistently held that every statute is presumed to be constitutional and have required that invalidity be established beyond a reasonable doubt. *Eielson* v. *Parker,* 179 Conn. 552, 557, 427 A.2d 814 (1980); *Patterson* v. *Dempsey,* 152 Conn. 431, 444, 207 A.2d 739 (1965); *Norwalk Street Ry. Co.'s Appeal,* 69 Conn. 576, 594, 37 A. 1080 (1897).

The standard by which § 31-308 (d) must be tested, for equal protection purposes, is whether the classifications that it embodies bear a rational relationship to a legitimate state interest. *Eielson* v. *Parker,* supra, 563; *Lovett* v. *Atlas Truck Leasing,* 171 Conn. 577, 585, 370 A.2d 1061 (1976). "[W]hen measured by the rational relationship test, the equal protection guaranty does not take from state legislatures 'all power of clas-

sification. . . . Most laws classify, and many affect certain groups unevenly, even though the law itself treats them no differently from all other members of the class described by the law. When the basic classification is rationally based, uneven effects upon particular groups within a class are ordinarily of no constitutional concern. . . . The calculus of effects, the manner in which a particular law reverberates in a society, is a legislative and not a judicial responsibility. . . . ' " (Citations omitted.) *Eielson* v. *Parker,* supra, 564–65.

We begin our analysis, therefore, by reviewing the legislative background of the scarring provisions of § 31-308 (d) to discern the state interest that the legislature sought to promote.[2] Before doing so, however, we emphasize that, like the United States Supreme Court, we have "consistently deferred to legislative determinations concerning the desirability of statutory classifications affecting the regulation of economic activity and the distribution of economic benefits." *Idaho Department of Employment* v. *Smith,* 434 U.S. 100, 101, 98 S. Ct. 327, 54 L. Ed. 2d 324 (1977) (per curiam); see *Schieffelin & Co.* v. *Department of Liquor Control,* 194 Conn. 165, 186, 479 A.2d 1191 (1984); *Brunswick Corporation* v. *Liquor Control Commission,* 184 Conn. 75, 83–84, 440 A.2d 792 (1981).

In *Rivera* v. *I. S. Spencer's Sons, Inc.,* 154 Conn. 162, 223 A.2d 808 (1966), this court had occasion to review

---

[2] At oral argument, the plaintiff claimed that there must be some indication in the legislative history that the rational basis that might justify a classification was in fact the one upon which the legislature acted. The test, however, is whether this court can *conceive* of a rational basis for sustaining the legislation; we need not have evidence that the legislature actually acted upon that basis. See *United Illuminating Co.* v. *New Haven,* 179 Conn. 627, 642, 427 A.2d 830, appeal dismissed, 449 U.S. 801, 101 S. Ct. 45, 66 L. Ed.2d 5 (1980). To hold otherwise would not only drastically alter the rational basis standard, but would also undermine the presumption of constitutionality, ab initio, for economic legislation.

the legislative background of the disfigurement provisions of § 31-308 (d). We noted that the pattern of the various amendments to the disfigurement statute "was to increase the portions of the body embraced in the disfigurement provision and that this purpose was accomplished by the enumeration of additional specific portions of the body . . . ." Id., 165–66. Significantly, we noted further that "the broadening of the disfigurement provision, by successive amendments, to include additional enumerated portions of the body has tended to follow the increasing exposure of modern dress." Id., 166. Public Acts 1967, No. 842 amended § 31-308 and replaced the enumeration of compensable body parts with an all-inclusive coverage of "scar[s] on, any part of the body" but excluded those "resulting from a hernia operation or any spinal surgery." Thus, the disfigurement coverage of § 31-308 for scars was changed from a system of enumerated inclusions to one of enumerated exclusions. In 1975, Public Acts 1975, No. 75-48 changed the "hernia operation" exclusion to 'an inguinal hernia operation" exclusion to make the disfigurement provision consistent with the "[p]revious practice" of allowing compensation for "visible scars." 18 H.R. Proc., Pt. 3, 1975 Sess., p. 1292, remarks of Representative Joseph S. Coatsworth.

Throughout the evolution of the disfigurement statute, an important consideration for the legislature has been whether a scar is "more likely to be exposed to view." *Rivera* v. *I. S. Spencer's Sons, Inc.*, supra, 166. It appears, therefore, that the state interest the legislature sought to promote has been compensating workers for scars that are ordinarily visible.

The plaintiff challenges the reasonableness of the classifications of § 31-308 (d) in two related respects. He first claims that our holding in *Rivera* v. *I. S. Spen-*

*cer's Sons, Inc.,* supra, supports the proposition that probability of exposure is an unsound basis for determining which scars are compensable. He argues further that the classifications are irrational because they do not afford benefits to all workers who are similarly situated, thereby including less than would be logical to achieve the intended government end. We find neither argument persuasive.

In *Rivera* v. *I. S. Spencer's Sons, Inc.,* supra, we held that the phrase "legs below the knees," describing an area of the body for which compensation for scars was allowed by the disfigurement statute, did not include the feet, but that the portion of the scar extending above the plaintiff's foot, though not likely to be exposed, was nonetheless compensable under the then current version of the statute. We did not hold that the legislature could not base a classification on the likelihood that certain scars would ordinarily be exposed to view while others would not. Indeed, we recognized that the probability of exposure is "an important consideration in a determination of the amount of the award, if any is made." Id., 167.

Accordingly, having determined that the legislature has a legitimate interest in compensating workers for visible scars, and thus could base its classification on whether a scar was likely to be exposed to view, we need decide only whether the spinal surgery exclusion is rationally related to that objective. The classifications set forth in § 31-308 (d) pass this test. It was surely rational for the legislature to conclude that scars resulting from spinal surgery would less likely be exposed to view because such scars are usually located on a person's trunk, an area ordinarily not exposed to view, which had been excluded from coverage in earlier stages of the evolution of the disfigurement statute.

The plaintiff's related claim is in terms of underinclusiveness. This aspect of § 31-308, the plaintiff maintains, renders the statute unconstitutional, because it frustrates, rather than promotes, the state's interest in compensating workers for scars resulting from work-related injuries. Perfect line drawing, however, is a rarity. Thus, " '[i]f the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." ' " *Idaho Department of Employment* v. *Smith,* supra, 101. Further, although certain statutory classifications appear underinclusive when viewed in light of a single legislative objective, the legislature may actually have sought to achieve more than one purpose simultaneously. L. Tribe, American Constitutional Law (2d Ed.) § 16-4, p. 1447. The state has a legitimate interest, for example, in controlling its own costs, as well as those of private employers. See *Geduldig* v. *Aiello,* 417 U.S. 484, 495–96, 94 S. Ct. 2485, 41 L. Ed. 2d 256 (1974).

The classification challenged in the present case relates to the asserted underinclusiveness of the set of risks, involving work-related scars, that the state has selected to insure or has required private employers to insure. There is nothing in the constitution, however, that requires the state to subordinate or compromise its legitimate interests solely to create a more comprehensive program than it already has. Id., 496. As the United States Supreme Court has reminded us, a state, consistent with the equal protection clause, " 'may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. . . . The legislature may select one phase of one field and apply a remedy there, neglecting the others. . . .' Particularly with respect to social welfare programs, so long as the line drawn by the State

is rationally supportable, the courts will not interpose their judgment as to the appropriate stopping point. '[T]he Equal Protection Clause does not require that a State must choose between attacking every aspect of a problem or not attacking the problem at all.' " (Citations omitted.) Id., 495.

There is no error.

In this opinion the other justices concurred.