[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action wherein the plaintiffs, Roger V. Pelkey and Patricia C. Pelkey, are appealing, under the provisions of Connecticut General Statutes Section 7-250, sewer assessments levied by the defendant, the Coventry Water Pollution Control Authority (WPCA), on property known as 66 CT Page 3819 and 62 School Street, Coventry, Connecticut.
On March 24 and 25, 1993, this court heard a trial de novo and makes the following factual findings. The property which is the subject of the assessments in question is owned by the plaintiffs and consists of two adjoining parcels which, when combined, comprise three apartment buildings containing eight, four, and two apartments respectively. These buildings presently dispose of waste water by means of interconnected septic tanks and leaching fields. The plaintiffs purchased the property in 1989, and, because of the depressed market for residential rentals which has developed since then, the rents charged for these apartments has remained substantially the same to the present.
Sometime before March 1992, sewer lines were extended along School Street reaching the plaintiff's property which since March 1992 has had access to the public sewer system. In compliance with Connecticut General Statutes Sections7-249 and 7-250, on March 16, 1992, the WPCA sent notice to the plaintiffs, at the proper address, that a public hearing regarding the levy of benefit assessments for the plaintiff's property would be held on March 31, 1992 (Defendant's Exhibit 3). At that hearing benefit assessments of $36,493 and $27,883 for the two parcels were approved by the WPCA. On April 6, 1992, the WPCA filed copies of the assessments in the Coventry Town Clerk's Office. On April 9, 1992 the Willimantic Chronicle published copies of these assessments at the request of the WPCA. And on April 6, 1992, the WPCA mailed copies of the assessments as approved to the plaintiffs at the address dictated by Connecticut General Statutes Section 7-250. (Defendant's Exhibits 4, 5, and 6).
On April 27, 1992, the plaintiffs filed the appeal to this court claiming that the WPCA failed to send them notice of the approved assessments and that these assessments are excessive. The plaintiffs request that this court reduce the amount of the assessments.
The plaintiffs are the owners of the property which forms the subject matter of the sewer assessments, and, therefore, are aggrieved by the decision of the WPCA, Bassett v. Norwalk, 157 Conn. 279 (1968), p. 285. CT Page 3820
 I
As to the first claim the plaintiffs introduced the testimony of Roger V. Pelkey to the effect that the plaintiffs never received any notice of the approved assessments. The court finds that these notices were mailed to the plaintiffs at the proper address. These notices had the same address as the notice of the public hearing which the plaintiffs admit receiving. The WPCA clerk testified, and the court believes, that she personally addressed these notices, transported them to a U.S. Post Office, and mailed them at the Post Office. Failure to receive the notice does not preclude the court from determining that the notice was actually sent in accordance with the law, Vecchio v. Sewer Authority, 176 Conn. 497 (1979), p. 503, and the court so finds.
 II
Turning to the issue of whether the benefit assessments are excessive, it should be noted that Connecticut General Statutes Section 7-249 permits the WPCA to levy such assessments on properties which are especially benefited by the installation and availability of a public sewerage system. The presence of the system must confer a benefit upon the property owner that is distinct from any benefit which accrues to the general public, i.e. the presence and availability of public sewers "must increase the market value of the individual's property," Cyr v. Coventry, 216 Conn. 436
(1990), p. 442.
Under the statute the amount of the assessment "shall not exceed the special benefit accruing to the property." In establishing the amount of benefit, the WPCA is authorized to consider the area, frontage, grand list valuation, present and permitted land use, and "any other relevant factors." Any benefit assessment levied is entitled to a presumption of correctness which imposes on the property owner the burden of proving by competent evidence that the assessment exceeds the increase in the fair market value of the property due to the improvement, Ibid., pp. 442 and 443. The standard of proof is that of a fair preponderance of the evidence, Anderson v. Litchfield, 4 Conn. App. 24 (1985), p. 28.
The plaintiffs offered the testimony of Leslie C. Lewis, CT Page 3821 an experienced real estate appraiser, regarding a comparison of the fair market value of the parcels before and after the presence of public sewers. Lewis noted that, while the "market" approach to valuation of real property is usually considered the best method for that purpose, because of the dirth of comparable sales of rural apartment complexes which would display the difference generated by the presence or absence of public sewers, that method is unavailable for this case (Plaintiffs' Exhibit A, p. 5). Instead he adopted the "income" approach. This approach, in essence, estimates the yearly expected income from the property, subtracts the yearly expected operating expenses, and divides the difference by a capitalization rate, which is derived from an expected yield on investment, to produce a market value.
Utilizing this method, Lewis valued the parcels at $432,000 before sewers (Plaintiffs' Exhibit A, p. 5A). Again using the income method, he valued the parcels after the presence of public sewers, and, because the benefit assessment payments would increase the yearly operating expenses and, therefore decrease the net operating income, he arrived at a post-sewer system market value of $404,000 (Plaintiffs' Exhibit A, p. 5B). Thus, according to the plaintiffs' appraiser, the presence of public sewers lowers the fair market value of the parcels by $28,000 rather than conferring any increase in market value. This evaluation does not include a consideration of value if the buildings on these parcels were actually hooked up to the public sewers, but only estimates the change in market value, attributable to the availability of hook up and the attendant benefit assessment payments as levied by the WPCA. Lewis also gave his opinion as to fair market value if the three buildings on the property were to be connected to the public sewer line. In that situation, connection and user fees must also be included, and, again using the income method, Lewis then valued the parcels at $373,000, for a net decrease in market value of $59,000 (Plaintiffs' Exhibit A, p. 5D).
In Lewis's opinion, these decreases in market value arise because, under present market conditions, landlords are in no position to raise rents so as to pass added operating costs, such as assessment payments, user fees, etc., on to tenants. Instead, such additional expenses must be absorbed by the landlord lowering his net income which in turn, lowers the economic attractiveness of owning the property. Under CT Page 3822 this reasoning, as long as the existing private septic system is functional and as long as the rental market remains depressed, the installation and availability of public sewers will always reduce the fair market value of residential apartment complexes rather than enhance their value because added costs in the form of assessment payments and fees will be incurred.
The WPCA introduced the testimony of Lindell Braasch, Assessor for the Town of Coventry, and, by virtue of her position, a person experienced in appraising real estate. Braasch used the market sales approach to appraise the plaintiffs' property both before and after hook up to the public sewers (Defendant's Exhibit 7, p. 3). She valued the parcels at $385,000 before hook up and at $562,000 after hook up, for a benefit to the property of $177,000 (Defendant's Exhibit 7, pp. 3 and 4).
Braasch's method involved locating comparable sales, but, because no reasonably similar sales of apartment complexes before and after public sewer access could be found, she modified that approach in the following manner. Braasch examined four sales of multiple building apartment complexes in the Coventry area and arrived at an average sale price per apartment unit of $27,500. She then multiplied that ratio by fourteen, the number of apartment units on the plaintiff's property, to arrive at a total value of $385,000. She opined that this value corresponds to the market value of the plaintiffs' property before public sewer hook up because the plaintiffs' three buildings have an interconnected septic system limiting sale of the buildings as an entire complex, as opposed to selling each building separately.
Braasch concludes that once the buildings are connected to the public sewers this limitation evaporates, and the buildings can be sold as separate parcels. Thus, the presence of public sewer access enhances the value of the property by permitting sale of the property in parts. She then located recent sales for single apartment building properties in the area having a similar number of units to each of the three buildings in the plaintiffs' complex. She determined that the average sales price per unit for units in a single building transaction was $37,500. Again she multiplied this ratio by fourteen and obtained a total value of $562,000. She opines that this value represents the CT Page 3823 market value of the plaintiffs' property after sewer hook up.
The court finds that this method of evaluating the plaintiffs' property is flawed. First, Braasch did not evaluate the parcels before and after the improvement was made but rather purported to compare the fair market value before and after hook up. Second, she gave no consideration as to whether subdivision of the apartment complex was legally permitted under existing subdivision or zoning regulations. Third, she did not consider if any market for purchasing a single building from a group exists. Finally, this method fails to compare the sales prices of apartment buildings with public sewer access to the sales prices of apartment buildings without such access.
The rejection of the WPCA's expert's valuation does not, of course, establish that the plaintiffs' expert's opinion is entirely correct. But Braasch's difficulty in attempting to evaluate the parcels using the market sales approach does validate the necessity of using an alternate method, such as the income approach employed by the plaintiffs' appraiser. While finding that the income method of valuation was justified, the court does not accept Lewis's opinion in its entirety.
His conclusions fail to consider adequately the increase in attractiveness to a prospective purchaser which results from accessibility to public waste water disposal. Private septic systems eventually malfunction, and repair or replacement of tanks and leaching fields can be a costly proposition and may repulse or deter prospective tenants during the disruption of repair. Also, Lewis's methodology entirely discounts a prospective buyer's consideration that the presently depressed rental business may improve in the future. This potential for passing on additional costs due to the assessment payments, albeit in futuro, certainly would be a factor contemplated by the parties to a sale. See e.g. Tower Bus Park Assn. No. 1, Ltd. Partnership v. WPCA,213 Conn. 112 (1989), p. 119.
As the trier of fact, the court can determine which method of valuation accomplishes a just result, National Folding Box Co. v. New Haven, 146 Conn. 578 (1959), p. 588. Also, the court may accept or reject any part or all of the testimony of appraisers when ascertaining fair market value, CT Page 3824 Eichman v. J. J. Building Co., 216 Conn. 443 (1990), pp. 450 to 452. In this case the court finds that the income approach utilized by Lewis was justified and accurate if coupled with adjustments made to consider the enhancement in value described above.
The court finds that the plaintiffs have proven by a preponderance of the evidence that the assessments as levied on their property were excessive, and they have rebutted the presumption of correctness which normally attaches to such assessments. Specifically, the court finds that the fair market value of the parcels before improvement was $430,000, substantially equivalent to Lewis's valuation. The court finds that the accessibility to public sewers increases the fair market value of the parcels to $445,000, for a net benefit of $25,000. The court has arrived at this figure by determining that the added expense of assessment payments would not diminish the income this complex is capable of generating over the long run and that viewing the capacity to generate income is a factor a willing buyer is very likely to consider when seeking to purchase property.
It should be noted that the plaintiffs' appraiser estimated the longevity of a new, private septic system to be about twenty-five years (Plaintiffs' Exhibit A, p. 5A), and he predicted that the cost of replacing such a system to be about $30,000 (Plaintiffs' Exhibit A, p. 5C). The opportunity to eliminate these costs, disruptions, and the aggravation of engaging in extensive and periodic renovation of the waste water disposal system causes the fair market value of these parcels to increase by the presence of a public sewer system. The court finds this enhancement to be a total of $25,000.
Therefore, the appeal is sustained, and the benefit assessment is reduced as follows:
1. The assessment on parcel 66 School Street is reduced from $27,883 to $10,750.
2. The assessment on parcel 62 School Street is reduced from $36,493 to $14,250.
BY THE COURT,
Samuel J. Sferrazza Judge, Superior Court CT Page 3825