[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] RULING ON MOTION TO DISMISS
This case is presented in the context of a motion to dismiss, but it is not new, as it has developed, to any branch of government. The plaintiffs decedent, Wilfred Lagassey, passed away on October 8, 1992. The cause of death was a ruptured abdominal aneurism. The representative of his estate claims in this complaint, and in previous incarnations of this action, that death was caused by the negligence of one or more employees of the University of Connecticut Health Center and John Dempsey Hospital. From the materials presented in connection with the motion, virtually all of which are not disputed, the following history is presented.
Family of the decedent wondered at first whether Mr. Lagassey's death might have been caused by medical malpractice. Accordingly, they sought the opinions of two physicians within several months of the deaths, and both indicated that there was, in their opinions, no malpractice.
One of the physicians, Dr. Hugh B. Friend, was a Hartford internist who reportedly was Mr. Lagassey's primary care physician; the second was Dr. Richard Gossberg, a vascular surgeon affiliated with Yale New Haven, who also indicated that there appeared to be no actionable negligence. There the matter rested temporarily.
More than a year later, a family member who discussed the situation at a social occasion received advice that perhaps there had been malpractice. Following up on the thought, the family consulted with a Dr. Deckoff of New York City, who apparently rendered an opinion to the effect that the death was caused by medical malpractice. Relying on this opinion, the family submitted a claim to the Claims Commissioner on September 19, 1994, on behalf of the estate, and on October 5, 1994, a second claim was presented on behalf of Louisette Lagassey individually. Also on October 5, 1994, the first action in Superior Court was filed. This action was dismissed for failure to receive authorization from the Claims Commissioner, because the action, against an employee of the health center and the health center itself, was really an action against CT Page 1381 the state and therefore was barred by sovereign immunity unless the proper statutory procedures were followed.
The state[1] moved to dismiss the actions from the jurisdiction of the Claims Commissioner as well, because of the one-year limitation set forth in § 4-148 (a) of the General Statutes. On September 12, 1995, the Claims Commissioner dismissed the claims because of untimeliness. The family's position had been that although the claims indeed were presented more than a year after death, the family had exercised reasonable care in attempting to ascertain whether there was a valid claim and the claim was, then, brought within a year of when "the damage or injury . . . in the exercise of reasonable care should have been discovered. . . ." See § 4-148 (a). This argument was rejected by the Claims Commissioner.
The family, represented by counsel throughout, then went to the General Assembly, which passed a Special Act granting authority to present the claim. The language of the act, Special Act 96-16, will be mentioned in more detail below. In any event, the family then returned to the Claims Commissioner and notices of claim were filed on June 25, 1996. The state objected again, this time on the ground that the Special Act which authorized the filing was constitutionally invalid because it violated the "exclusive public emolument" clause of Article I, § 1 of the Connecticut Constitution. The Claims Commissioner overruled the objection on April 20, 1998, and authorized the claim, on the ground that the commissioner had no authority to review the actions of the General Assembly, but denied the claim asserted by Louisette Lagassey individually because the General Assembly had not authorized that claim. The commissioner finally authorized the filing of the action brought by the estate on June 9, 2000, after a certificate of good faith had been filed. This action was filed in April, 2001.
The state moved to dismiss this action on the ground that sovereign immunity had not been effectively waived, because Special Act 96-16
violated the constitutional prohibition of public emoluments and thus had no effect. After argument, Judge Fineberg granted the motion to dismiss on December 10, 2001. His decision consisted of the citation of two Supreme Court cases, Merly v. State, 211 Conn. 199 (1989); and Chotkowskiv. State, 240 Conn. 246, 260 n. 18 (1997). The plaintiff moved for articulation and to reopen and to reconsider. Before the motions could be acted on, Judge Fineberg passed away. The matter was presented to me, and, in the circumstances, I held that the merits of the motion to dismiss should be reargued before me. They were so argued.
Initially, the plaintiff claims that the issue is not properly presented by means of a motion to dismiss, but rather should be presented CT Page 1382 by special defense and, perhaps, a motion for summary judgment. This the course adopted in cases such as Merly v. State, 211 Conn. 199 (1989). I do not see any advantage to postponing ruling on the issue. There is authority to the effect that the subject matter jurisdiction of the court is implicated and similar issues have been decided in the context of a motion to dismiss. See, e.g., Circle Lanes of Fairfield v. Fay,195 Conn. 534 (1985)[2] Because factual materials were submitted in support of and in opposition to the motion and there was no functional difference in the presentation or argument of the issue between a motion for summary judgment and the motion to dismiss, then simply postponing the decision and requiring more money to be spent by both sides makes little sense. The Supreme Court has recently resolved any confusion by specifically stating that, in the same context as presents itself here, a motion to dismiss is the proper vehicle. Chotkowski v. State, 213 Conn. 13,17, 19, n. 7, n. 8 (1989). In any event, I shall decide the issue.
The state's fundamental position is that the action of the legislature in enacting S.A. 96-16 violated Art. I, § 1 of the Connecticut Constitution; the plaintiffs fundamental position is that the claims commissioner erred initially in determining that the action was barred by the timeliness provisions of § 4-148 (a) and that a public purpose thus was served by the special act. If the state's position is to be sustained, I must find the special act to be unconstitutional.
The black letter rubric is quite straightforward. The state and its employees acting in their employment capacity enjoy sovereign immunity from suit, unless such immunity is waived:
"`We have long recognized the common-law principle that the state cannot be sued without its consent. Horton v. Meskill, 172 Conn. 615, 623, 376 A.2d 359
(1977); Textron, Inc. v. Wood, 167 Conn. 334, 339, 355 A.2d 307 (1974). We have also recognized that because the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state. Horton v. Meskill,
supra; Textron, Inc. v. Wood, supra; Baker v. Ives, 162 Conn. 295, 297, 294 A.2d 290 (1972); Murphy v. Ives, 151 Conn. 259, 262, 196 A.2d 596 (1963); Anderson v. Argraves, 146 Conn. 316, 320, 150 A.2d 295
(1959). Therefore, we have dealt with such suits as if they were solely against the state and have referred to the state as the defendant. Anselmo v. Cox, 135 Conn. 78, 79-80, 60 A.2d 767, cert. denied, CT Page 1383 335 U.S. 859, 69 S.Ct. 132, 93 L.Ed. 405 (1948); Rusch v. Cox, 130 Conn. 26, 34, 31 A.2d 457 (1943).' (Footnote omitted.) Sentner v. Board of Trustees, 184 Conn. 339, 342-43 [439 A.2d 1033 (1981)]." Fetterman v. University of Connecticut, 192 Conn. 539, 550-51, 473 A.2d 1176 (1984). Krozser v. New Haven, 212 Conn. 415, 420 (1989).
Chapter 53 of the General Statutes, proceedings via the Claims Commissioner, is one example of a limited waiver of sovereign immunity, but time limitations have been established. § 4-148 (a). When one has not complied with the timeliness provisions, one can apply to the General Assembly for relief by special act. § 4-148 (b). Relief may be granted if the legislature finds equitable circumstances and a public purpose. If there is no public purpose, then the special act violates the "public emoluments" clause.
 To prevail under article first, § 1, of our constitution, the state must demonstrate that "the sole objective of the General Assembly is to grant personal gain or advantage to an individual." State ex rel. Higgins v. Civil Service Commission, 139 Conn. 102, 106, 90 A.2d 862 (1952). If, however, an enactment serves a legitimate public purpose, then it will withstand a challenge under article first, § 1. Serrano v. Aetna Ins. Co., 233 Conn. 437, 458-59, 664 A.2d 279 (1995); Tough v. Ives, 162 Conn. 274, 292, 294 A.2d 67 (1972). Moreover, we conduct our review of [the special act] mindful that "legislative enactments carry with them a strong presumption of constitutionality, and that a party challenging the constitutionality of a validly enacted statute bears the heavy burden of proving the statute unconstitutional beyond a reasonable doubt." Beccia v. Waterbury, 192 Conn. 127, 133, 470 A.2d 1202
(1984); see also Faraci v. Connecticut Light Power Co., 211 Conn. 166, 168, 558 A.2d 234 (1989). Chotkowski v. State, 240 Conn. 246, 257-58 (1997).
The decision as to whether S.A. 96-16 passes constitutional muster is informed primarily by two decisions, Merly and Chotkowski. Merly v.State, supra, came to the court in a procedural posture almost identical to that of this case, although the underlying facts are, of course, somewhat different. A prisoner in the custody of the state, one Alberto Ocasio, apparently hanged himself in prison, and there was some record of CT Page 1384 prior suicide attempts while in prison. The death occurred on July 30, 1979. The family pursued no legal recourse until January, 1981, when they requested medical documents from the state. On April 16, 1981, the representative of the estate filed a claim with the claims commissioner, who denied the claim as untimely pursuant to § 4-148 (a) of the General Statutes. The General Assembly rejected the request of the commissioner to approve the ruling and by Special Act 84-21 authorized the estate to bring the action and specifically prohibited the state to assert a statute of limitations defense or to otherwise claim untimeliness. The plaintiff again sought authorization from the Claims Commissioner, the state objected despite the language of the Special Act, and the commissioner, stating that he had no authority to contravene the legislature, authorized suit. The estate brought suit, and the state moved for summary judgment on the ground that the special act authorizing suit violated Article I, § 1[3] of the state constitution. The trial court granted summary judgment in favor of the state, and the plaintiff appealed.
The Supreme Court affirmed. One of the plaintiffs claims was that summary judgment should not have been granted because the facts were in dispute regarding whether the time requirements of § 4-148 (a) had been met. Section 4-148 (a) states that "no claim shall be presented . . . but within one year after it accrues. Claims for injury to person or damage to property shall be deemed to accrue on the date when the damage or injury is sustained or discovered or in the exercise of reasonable care should have been discovered, provided no claim shall be presented more than three years from the date of the act of event complained of." The plaintiff suggested that some documents had been tardily executed by the state, and that the cause of action was not actually discovered until more than a year after the death.
The court first rejected the state's claim that the initial determination of the claims commissioner to the effect that the claim was time-barred was not reviewable; the state apparently argued that the only issue was whether the special act authorizing suit was constitutional. The court held, at 205, that if the commissioner had been mistaken in his initial finding that the claim was time-barred, then the special act would serve the minimal public purpose necessary to avoid a finding of unconstitutionality under the public emoluments clause. The issue of timeliness was, then, reviewable by the trial court and subject to review by the Supreme Court on appeal.
The court then analyzed what was actionable harm for the purpose of § 4-148 (a):
CT Page 1385
This court has construed the word "injury" in General Statutes 52-584,[6] which establishes the date for commencement of the period allowed for bringing a malpractice action as "two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered" to refer to some form of actionable harm. Catz v. Rubenstein, 201 Conn. 39, 45, 513 A.2d 98
(1986). "`Actionable harm' occurs when the plaintiff discovers, or in the exercise of reasonable care should have discovered, the essential elements of a cause of action." Lambert v. Stovell, 205 Conn. 1, 6, 529 A.2d 710 (1987). The statute begins to run when the plaintiff discovers some form of actionable harm, not the fullest manifestation thereof. Burns v. Hartford Hospital, 192 Conn. 451, 460, 472 A.2d 1257
(1984). Applying this construction of the word "injury" to the same term as used in the similar provisions of 4-148 (a), we agree with the plaintiff that his claim was not necessarily barred by the lapse of one year from July 30, 1979, when the decedent's death occurred. Merly v. State, 211 Conn. 199, 205-06
(1989).
The court then discussed the plaintiffs argument that the claim should survive because although the family knew of most of the underlying facts, it did not have all the information required to allege malpractice. The court wrote:
The plaintiff contends that knowledge of the decedent's suicide, as stated in the death certificate, would not alone have indicated malpractice and that an examination of the medical records indicating awareness of the decedent's previous suicide attempts on the part of hospital personnel was necessary before the family could possibly have learned the basis for a malpractice claim. He argues that a review of all the medical records as well as the autopsy report was necessary before any qualified expert opinion as to the existence of malpractice could have been obtained. In Lambert v. Stovell, supra, 6, we rejected a similar argument that the malpractice statute of limitations should not begin to run until the plaintiff "discovered all the information the defendant was CT Page 1386 allegedly obliged to disclose to him." (Emphasis in Original.) Merly v. State, 211 Conn. 199, 208 (1989).
The court concluded, in this part of the analysis, that because it was not disputed that the family undertook no investigation at all until more than a year after the death, then the determination of the claims commissioner that the plaintiff did not satisfy the requirements of § 4-148 (a) was correct and that the court did not err in concluding that there was no genuine factual dispute as to that issue.
The next question was whether a public purpose was served by the special act. The court reasoned as follows:
 We have construed the provision of article first, 1 prohibiting "exclusive public emoluments or privileges" to apply to legislation preferring certain individuals over others when wholly unrelated to the public interest. "No enactment creating a preference can withstand constitutional attack if the sole objective of the General Assembly is to grant personal gain or advantage to an individual. Its validity is contingent, at least in part, upon its furthering a public purpose; if enacted with that end in view, legislation can be sustained even though it may incidentally confer a direct benefit upon an individual or a class." State ex rel. Higgins v. Civil Service Commission, 139 Conn. 102, 106, 90 A.2d 862
(1952). "Only if an act serves some public purpose can it be constitutionally sufficient." Tough v. Ives, supra, 292.
Under circumstances like those in the present case, where a special act has allowed a person named therein to bring a suit based upon a statutory cause of action that would otherwise be barred for failure to comply with a time limit specified in the statute, we have ordinarily been unable to discern any public purpose sufficient to sustain the enactment. Vecchio v. Sewer Authority, 176 Conn. 497, 503-507, 408 A.2d 254 (1979) (special act validating an appeal from a sewer assessment commenced after expiration of the time for taking such an appeal held unconstitutional); Hillier v. East Hartford, supra (special act validating notice of sidewalk defect given to municipality after time allowed held unconstitutional). We have also found no CT Page 1387 public purpose in a special act, which we held invalid, allowing a plaintiff to sue the highway commissioner in negligence and removing the concurring negligence of anyone but the plaintiff and her father as a defense. Tough v. Ives, supra, 292-94. Merly v. State, 211 Conn. 199, 212-13 (1989).
The court finally rejected the plaintiffs claims regarding the supposed public purpose of the special act in question, in that there was no suggestion that a governmental official had misled the plaintiff or had contributed in any significant way to the delay. Summary judgment, then, was affirmed.
The plaintiff in this action seizes upon Merly's discussion of the reviewability of the claims commissioner's determination of untimeliness to argue that there are disputed facts regarding timeliness in this case. The plaintiff argues that because evidence was presented regarding the initial efforts of the family to seek an opinion regarding the likelihood of malpractice and the resulting opinions that there was no malpractice, it was reasonable not to continue with investigative efforts. Because some reasonable timely effort had been made, the argument goes, then the action did not accrue until the family finally obtained an opinion supporting this point of view more than a year after the death. It was only then that "actionable harm" occurred and the action accrued.
If one assumes that the plaintiffs version is true, the action is still barred by application of Merly and of Lambert v. Stovell, 205 Conn. 1
(1987). In Lambert, a controlling issue was whether, in a case turning on the issue of informed consent, the trial court committed error by refusing to charge that the statute of limitations could be tolled in the circumstances of the case. The plaintiff claimed that the defendant physician had not informed him of the possibilities of infection and non-union in an operation fusing an ankle, and that those events occurred. The court first held that the two year provisions of §52-584 of the General Statutes controlled rather than the three year period specified in § 52-577. It was agreed that the plaintiff knew of the facts of non-union and infection well within the two year period, but claimed that the two year period should not begin until he had gained knowledge of the information which the defendant physician allegedly should have communicated to him, but did not. In these circumstances, the Supreme Court affirmed the trial court's decision that it was proper not to present the issue of putative tolling of the statute of limitations to the jury: as a matter of law, the statute of limitations was not tolled when the plaintiff had knowledge of the facts, as opposed to the legal CT Page 1388 theories which might arise from the facts. The "actionable harm" arose at the earlier time when the plaintiff had knowledge of the underlying facts.
 Section 52-584 ""requires that the in party bring suit within two years of discovering the in. . . . In this context injury occurs when a party suffers some form of "actionable harm." (Emphasis added.)" Catz v. Rubenstein, 201 Conn. 39, 43, 513 A.2d 98 (1986), citing Burns v. Hartford Hospital, 192 Conn. 451, 460, 472 A.2d 1257 (1984). "Actionable harm" occurs when the plaintiff discovers, or in the exercise of reasonable care should have discovered, the essential elements of a cause of action. Catz v. Rubenstein, supra. "The focus is on the plaintiffs knowledge of facts, rather than on discovery of applicable legal theories." Id., 47.
 * * * * * The essential elements of a cause of action based upon a lack of informed consent are a breach of duty by the defendant and a causal connection between that breach and the harm to the plaintiff. See Logan v. Greenwich Hospital Assn., supra, 287-88 n. 1. The plaintiff alleges that the defendant failed to inform him of the material risks and consequences of surgery and testified that had he been aware of any such risks, including infection and non-union, he would have refused to consent to surgery. He also testified, however, that he had acquired actual knowledge of infection and non-union in August, 1977.
The plaintiff contends that this knowledge was not sufficient to commence the statutory limitation period, and that the statute should have remained tolled until he discovered all the information the defendant was allegedly obligated to disclose to him. As we stated in Burns v. Hartford Hospital, supra, the statute begins to run when the plaintiff discovers some form of actionable harm, not the fullest manifestation thereof. In August, 1977, the plaintiff had actual knowledge of infection and non-union, two allegedly nondisclosed, material risks that he testified would have caused him to refuse surgery. He CT Page 1389 therefore was aware of circumstances indicating that he had suffered a form of `actionable harm' and should have discovered his injury at that time. Accordingly, the defendant was entitled to prevail on his special defense of the statute of limitations. Lambert v. Stovell, 205 Conn. 1, 6-7 (1987).
In Burns v. Hartford Hospital, 192 Conn. 451 (1984), the plaintiffs minor son was treated in the defendant hospital. He suffered an infection, which ultimately seems to have resulted in scar tissue which permanently affected the boy's gait. Suit was brought more than two years after the actual alleged injury; the plaintiff representative argued that the action had not accrued until she had known that there really was an injury: a physician had advised her shortly after the injury occurred that it would improve. The Supreme Court affirmed the trial court's granting of summary judgment: even if she had been misled by a physician as to the prognosis, and thus had no reason to know that there would be any significant injury, the actionable harm accrued when she know of the initial facts of the injury. The statute of limitations which protected the hospital could not be tolled by the advice, perhaps erroneous, of a third party physician. Id., 459-60.
The final relevant case is Chotkowski v. State, 240 Conn. 246 (1997). Not a medical malpractice case, Chotkowski involved a claim of wrongful termination and contractual irregularities. The case had a long history: apparently the plaintiff, a physician at a state facility, had been reclassified and had his pay decreased. He was told by his supervisor there was no appeal. A series of disagreements led to his termination. He submitted a claim to the claims commissioner, which was dismissed as untimely. He then sought and was granted a special act by the legislature. The courts, including the Supreme Court, found that this special act violated the public emoluments clause. He then urged the General Assembly to pass the public act which amended the language which was codified at § 4-148 (b) and also secured a second special act authorizing suit. This time, and for the first time, the special act stated that the plaintiff had been misinformed of his rights by a state official and that compelling equitable circumstances existed authorizing suit. The claims commissioner authorized suit, relying on the special act, and the Superior Court rejected a motion for summary judgment by the state. On the merits, however, the plaintiffs persistence was not rewarded, because the court ruled in the plaintiffs favor on the emoluments issue but against the plaintiff of the underlying merits of the contractual case.
On appeal, the Supreme Court held that this time the emoluments clause CT Page 1390 was not violated:
 To prevail under article first, § 1, of our constitution, the state must demonstrate that "the sole objective of the General Assembly is to grant personal gain or advantage to an individual." State ex rel. Higgins v. Civil Service Commission, 139 Conn. 102, 106, 90 A.2d 862 (1952). If, however, an enactment serves a legitimate public purpose, then it will withstand a challenge under article first, § 1. Serrano v. Aetna Ins. Co., 233 Conn. 437, 458-59, 664 A.2d 279 (1995); Tough v. Ives, 162 Conn. 274, 292, 294 A.2d 67 (1972). Moreover, we conduct our review of S.A. 91-8 mindful that "legislative enactments carry with them a strong presumption of constitutionality, and that a party challenging the constitutionality of a validly enacted statute bears the heavy burden of proving the statute unconstitutional beyond a reasonable doubt." Beccia v. Waterbury, 192 Conn. 127, 133, 470 A.2d 1202
(1984); see also Faraci v. Connecticut Light Power Co., 211 Conn. 166, 168, 558 A.2d 234 (1989). Chotkowski v. State, 240 Conn. 246, 257-58 (1997).
After stressing that the legislature is to be accorded great deference in the consideration of what constitutes a public purpose, the court stated:
Although "[w]e have taken a broad view of the legislative goals that may constitute a `public purpose'"; Beccia v. Waterbury, supra, 192 Conn. 134; "[b]ecause the elements of a public purpose vary as much as the circumstance in which the term is appropriate, each case must be determined on its own peculiar facts." Tough v. Ives, supra, 162 Conn. 292. In general, however, we have found "that an act serves a public purpose under article first, § 1, when it promote[s] the welfare of the state . . . or when the principal reason for the appropriation is to benefit the public. . . ." (Citations omitted; internal quotation marks omitted.) Beccia v. Waterbury, supra, 134; Wilson v. Connecticut Product Development Corp., supra, 167 Conn. 117. Furthermore, an enactment will be deemed to serve a valid public purpose, even though it confers a direct benefit upon a particular CT Page 1391 individual, if it remedies an injustice done to that individual for which the state itself bears responsibility. Sanger v. Bridgeport, 124 Conn. 183, 189, 198 A. 746 (1938); see also Chotkowski II, supra, 213 Conn. 18; Merly v. State, supra, 211 Conn. 213-14; Vecchio v. Sewer Authority, 176 Conn. 497, 506-507, 408 A.2d 254 (1979); Hillier v. East Hartford, 167 Conn. 100, 108-109, 355 A.2d 1
(1974). In such circumstances, the benefit conferred upon a private party by the legislature be viewed as incidental to the overarching public interest that is served in remedying an injustice caused by the state.fn 18 Chotkowski v. State, 240 Conn. 246, 259-60 (1997).
 fn 18 By contrast, we have consistently held that legislation seeking to remedy a procedural default for which the state is not responsible does not serve a public purpose and, accordingly, runs afoul of article first, § 1, of the state constitution. See, e.g., Merly v. State, supra, 211 Conn. 214; Vecchio v. Sewer Authority, supra, 176 Conn. 5 06-507; Hillier v. East Hartford, supra, 167 Conn. 108-109. Thus, legislation cannot survive a constitutional challenge under article first, § 1, if it excuses a party's failure to comply with a statutory notice requirement simply because the noncompliance precludes consideration of the merits of the party's claim. Merly v. State, supra, 214; Vecchio v. Sewer Authority, supra, 506-507; Hillier v. East Hartford, supra, 108-109. As we stated in Chotkowski II, supra, 213 Conn. 18, if a statutory notice requirement "could be set aside for the benefit of a particular person simply because the legislature viewed his claim as meritorious, it would be difficult to justify enforcing [the requirement] to bar any claim . . . from being resolved solely on its merits." Chotkowski v. State, 240 Conn. 246, 260 n. 18 (1997).
From the authority cited above the following principles may be readily distilled. First, the legislature's findings and, of course, special acts are to be upheld unless constitutionally invalid beyond a reasonable doubt. Second, special acts granting an individual privilege are subject to scrutiny under the public emoluments clause and, in order to pass muster, must serve some sort of public purpose, the finding of which by CT Page 1392 the legislature is to be accorded deference. Third, a public purpose has been found at least where the applicant was misled by a public official or where the claims commissioner may have been mistaken in denying authorization to sue. See Merly, Sanger and Chotkowski. Fourth, because a public purpose would be served by rectifying a mistake by the claims commissioner, the opinion of the commissioner as to timeliness of claim may be reviewed by this court. Fifth, the concept of "actionable harm" as interpreted in the context of § 52-584 of the General Statutes has been applied to the question of when a cause of action accrues in the context of § 4-148 (a). And finally, the cause of action accrues when the party has or in the exercise of reasonable care should have knowledge of the underlying facts, but not necessarily opinions or conclusions.
It is clear that the commissioner initially found that the family should in the exercise of reasonable care have filed the claim in the commissioner's office within a year of the death, and thus have comported with § 4-148 (a).[4] He carefully reviewed the facts and determined that even if the family's view of the facts is accepted uncritically, the conclusion is inescapable that the opinion of Dr. Deckoff could have been obtained during the one year limitation period had reasonable care been exercised. Much as in Merly, the family did nothing for a year after receiving the first set of opinions, which were not those of state employees. The commissioner found essentially the facts recited above: Dr. Friend, the family physician, reviewed the case and found no malpractice. In January, 1996, Dr. Gussberg reached a similar conclusion. There was no dispute that "the claimant had access to all medical reports and related documentation within the limitations period. . . . Claimant was not misled, or otherwise deprived of information or reports, by the state or any agents thereof. . . . The issue is whether prior to August 1994, the claimant could have known, had she exercised reasonable care, that the doctor and hospital staff might have been negligent in their care and treatment of the decedent." The commissioner goes on the cite the claimant's position that reasonable care was exercised in seeking the opinions of two doctors within the limitations period, and that actionable injury or damage could not have been discovered until Dr. Deckoff's opinion was known, in that until then there was no knowledge of medical malpractice. He recognized the respondent's position that Dr. Deckoffs opinion was "merely an interpretation of otherwise available information" that could have been obtained in a timely manner. The commissioner agreed with the respondent.
On an independent review of the facts submitted to me, which are virtually the same as those reviewed by the claims commissioner and those submitted to the legislature, I agree with the commissioner. Under the CT Page 1393 standards enunciated in Lambert and Burns, the actionable harm accrued when the facts were known, and the fact that the interpretive opinion favorable to the plaintiff was not known until later is immaterial. I find that the commissioner was correct, then, so that no public purpose was served by the legislature in enacting S.A. 96-16, at least on that score. There similarly was no deceptive, misleading or otherwise equitably compelling conduct on the part of any state official or employee that served to delay the investigation or any inquiry. If simply not discovering a supportive opinion is reason for noncompliance with a statute of limitations, then there would, in effect, be no statute of limitations.[5]
It also is plain that S.A. 96-16 does not factually state a public purpose, and its language raises a question as to whether the conclusion that the act serves a public purpose has been reached.Special Act 96-16 § 1 reads in its entirety:
 Notwithstanding the failure to file a proper notice of a claim against the state with the clerk of the Office of the Claims Commissioner, as required by section 4-147 of the general statutes, within the time limitations specified by subsection (a) of section 4-148
of the general statutes, the estate of Wilfred Lagassey is authorized pursuant to the provisions of subsection (b) of section 4-148 of the general statutes to present its claim against the state to the Claims Commissioner, provided the General Assembly deems such authorization to be just and equitable and makes an express finding that such authorization is supported by compelling equitable circumstances and would serve a public purpose.
This language is somewhat ambiguous as to whether such findings actually were made by the General Assembly. I will assume for the purpose of this decision, however, that the General Assembly did make the conclusions required by § 4-148 (b)[6], and I will also assume that the public purpose was that presented in the family's statement to the legislature, that is, that doctors in the employ of the state ought to be held to the same standards as those in private practice. As a practical matter, the statement, which was not apparently expressly adopted in any event, makes little sense, because doctors are held to the same standard. In all of the cases interpreting and applying actions brought to the claims commissioner there is a different statute of limitations from that which would apply to actions against other entities, but time and time again the Supreme Court has enforced the limitation period in § 4-148 (a), CT Page 1394 in the absence a public purpose justifying an exception. See, e.g.,Chotkowski II, 213 Conn. 13 (1989).
The motion to dismiss is granted.
 ___________________, J. Beach